JULIA RICE v. PARLEY H. RICE.

*Jurors—Competency—Witnesses—Impeachment—Alienation of husband's affections—Evidence—Instructions to jury—Damages.*

1. The sources of a juror's information are important in determining his qualifications; citing *People v. Barker*, 60 Mich. 287.

2. A juror in a civil case testified on his *voir dire* that he had known both parties intimately for a long time; that he had talked with many different persons about the case, but had not discussed its merits; that the persons talked with had expressed an opinion to him, and he had also expressed an opinion based upon what he had heard; that he had formed a sort of an opinion, which it would take some evidence to remove, if what he had heard was true, but that it was not so fixed that he would not be governed by the evidence. On cross-examination he testified that he did not know as he had formed any opinion upon the merits; that he might have formed some impression; that he presumed he could not try the case as impartially between the parties as if he had not heard of it and formed said impression. It did not appear that the juror had conversed with either of the parties or their friends, or with any one having knowledge of the facts. And it is held that the juror was not legally disqualified.

3. Where it is sought to impeach a witness by proving his contradictory statements, time, place, and person must be fixed by the impeaching question, and the language which it is claimed the witness used must be given, and he be asked if he used it, and the same question, so far as the language used is concerned, must then be asked of the impeaching witness.

4. Plaintiff sued her father-in-law for alienating her husband's affections. Plaintiff and her family were Catholics, and her husband and his family were Protestants. Neither family favored the marriage. And in reversing a judgment in favor of the plaintiff it is held:

  *a*—Evidence of the defendant's statement, made in the presence of the plaintiff and her aunt, that "he would rather see his son dead than living with a Catholic," was competent; but his further statements, derogatory of a picture of the Virgin Mary, which was hanging upon the wall in plaintiff's house, were incompetent.

*b*—It was not competent to ask plaintiff, on her cross-examination, if she did not know that her church did not recognize as binding a marriage between a Protestant and a Catholic when solemnized by a Protestant minister, nor to ask plaintiff's sister, who was sworn as a witness in her behalf, if she did not know that in the Catholic church the marriage meant no salvation for the plaintiff, and if the witness did not object to that, for the purpose of rebutting the testimony of plaintiff and her sister that plaintiff's family did not object to the marriage, such proposed testimony being too remote for that purpose.

*c*—The testimony of the defendant's wife as to her objections to the marriage had no bearing upon the issue, and was properly excluded.

*d*—Questions put to defendant's wife on cross-examination, assuming that the witness had testified that the extent of plaintiff's sinning at a certain time against defendant's household was by again attending church, and asking her if she did not think a person in this country ought to be allowed, under reasonable restrictions, to embrace whatever religion seemed to him or her proper, should have been excluded.

*e*—A statement made by defendant's wife in a conversation had by her with a third party after the separation of the plaintiff and her husband, to the effect that he would not return to plaintiff, did not naturally tend to show ill feeling or prejudice against the plaintiff, and was not competent as affecting the credibility of the witness.

*f*—Any testimony from plaintiff's husband against her was within the prohibition of 3 How. Stat. § 7546, the provisions of which could not be avoided by the fact that plaintiff had testified to conversations and acts on the part of her husband in the presence of the defendant, as, had he been permitted to testify to these conversations to contradict her, he would have been a witness against her, which he could not be unless he came within the exceptions of the statute.[1]

*g*—The jury were properly instructed that it was not the duty of the defendant to advise his son not to separate from the plaintiff; that if the son had made up his mind to leave plaintiff if she rejoined her church, and, finding that she had done so, set about leaving her, and the defendant, while the son was so doing, advised him that he thought it was best for him to do so before they had children, there was no liability; that the jury must find that plaintiff's husband separated from her because the defendant alienated his affections; that he

---

[1] See note at end of opinion.

had the right to object to his son's marrying a Roman Catholic; that he had the right to advise his son that it would be unwise for him to live with plaintiff if she again joined the church; and that any advice given by defendant to his son after the separation would not afford a cause of action; citing *Hutcheson v. Peck*, 5 Johns. 196.

*h*—It was not error to refuse to instruct the jury that the defendant must have been the *sole* cause of the separation, as it would be sufficient if he was the *effective* cause, and the fact, if shown, that defendant's wife used her influence in the same direction would not relieve the defendant from the consequences of his own conduct.

*i*—Defendant's request for an instruction that there was no testimony entitling plaintiff to recover more than nominal damages, and that there were no facts upon which the jury could determine what, if any, loss plaintiff had sustained, either of the society, assistance, or support of her husband, was properly refused, for the reason that it left out entirely the damages resulting from mental anguish, mortification, and injured feelings, which damages, as also those recoverable for the loss of society of plaintiff's husband, were not capable of accurate measurement, and it was not necessary to introduce evidence of value.

*j*—It was error to allow the jury to award damages for loss of support, there being no evidence of the value of the same.

Error to Kalamazoo. (Buck, J.) Argued January 11, 1895. Decided March 19, 1895.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Osborn, Mills & Master*, for appellant.

*James H. Kinnane* and *Howard & Roos*, for plaintiff.

GRANT, J. Plaintiff recovered verdict and judgment against the defendant, her father-in-law, for the alienation of her husband's affections. Plaintiff and her family were Catholics; her husband and his family were Protestants. Her husband was defendant's only son. Both families were farmers, living about two miles apart. Plaintiff and her husband were of the same age, and 21 years old when

married.   It is evident that neither family looked with
much favor upon the marriage.   During the courtship the
question of her religion had been discussed between them.
He refused to be married in the Catholic church or by a
Catholic priest.   She yielded her wishes in this respect,
and they were married by a Protestant clergyman.   None
of the members of either family attended the wedding.
Immediately after their marriage they went to the defend-
ant's house, where they lived three months.   They then
moved to a house on defendant's farm, where they lived
together about six months, when plaintiff's husband
abandoned her, and returned to his father's home.   Mean-
while he worked on his father's farm.   She remained away
from her church for a while, but finally returned to it.
Whether her Protestant marriage resulted, *ipso facto*, in
dissolving her church relations, or whether she voluntarily
gave up her membership, does not clearly appear, nor is
it material to inquire.   On Sunday, the day her husband
abandoned her, she returned, and resumed her relations
with the church.   As she expressed it, she was "taken
back into the church."   On her return from church, be-
tween 10 and 11 o'clock in the forenoon, she found the
defendant and his wife, her husband, and the defendant's
hired man with a team removing the furniture from the
house, and was then informed by her husband, in the
presence of the defendant, that she had gone back to the
church, and he would no longer live with her.   The
household goods were removed, and she went back to her
former home.   The testimony of the plaintiff herself and
her witnesses tended to support her case.   The testimony
of the defendant and his witnesses was a plain and clear
denial of that on the part of the plaintiff, and, if true,
showed that he had done no more than to give his son
that advice which he was justified in giving.   If the jury
believed her testimony, she was entitled to a verdict; if

they believed his testimony, she was not. The errors alleged arise upon the competency of some of the jurors, the admission and rejection of testimony, and the charge of the court.

1. A juror named Jesse Hitchcock, on his examination, testified that he lived in the neighborhood; was acquainted with the defendant; had talked with many different persons about the affair; had not discussed the merits of the case; the persons with whom he talked expressed an opinion to him; he had also expressed an opinion based upon what he had heard; had formed a sort of an opinion, if what he had heard was true; that it would take some evidence to remove that opinion; but that it was not so fixed that he would not be governed by the evidence. On cross-examination he testified that he knew both parties, and had known them intimately for a long time; did not know as he had formed any opinion upon the merits; might have formed some impression.

"*Q.* Do you think you could try the case as fairly and impartially between the parties as you could if you hadn't, heard of it, and formed those impressions?

"*A.* Possibly not.

"*Q.* You think you could not?

"*A.* I presume I could not."

The juror was challenged for cause, and the challenge overruled.

Even in criminal cases, the formation or expression of opinion not based upon actual knowledge, or upon conversations with those cognizant of the facts, does not disqualify a juror, provided the juror shall declare on oath that he believes he can render a fair and impartial verdict. *Holt v. People*, 13 Mich. 224; *Ulrich v. People*, 39 Id. 245. In a civil case, the disqualification of a juror must clearly appear in order to justify a reversal by an appellate court. It does not appear that this juror had conversed with either of the parties or their friends, or with any one

having knowledge of the facts.     The sources of a juror's information are important in determining his qualifications. *People v. Barker*, 60 Mich. 287.     We do not think this juror was legally disqualified.

2. The defendant saw a picture of the Virgin Mary hanging upon the wall in plaintiff's house, which had been hung there by an aunt of the plaintiff, who was then present.     He asked plaintiff if she put it there, to which she replied in the negative.     He then asked the aunt, who said she put it there, and the conversation was permitted to be given about the picture.     The court held it incompetent; but, on the statement of plaintiff's counsel that he would show something more in that connection, it was allowed to stand.     Witness then testified that defendant said, in the presence of plaintiff and her aunt, that "he would rather see his son dead than living with a Catholic."     This testimony was competent, but the rest of the conversation was incompetent.     His dislike and condemnation of a picture had no earthly bearing upon the issue.     The language imputed to him by the witness was such as would naturally prejudice a jury.

3. On cross-examination of the plaintiff, this question was asked:

"Did you know that your church did not recognize a marriage as binding between a Protestant and Catholic, by a Protestant clergyman?"

This was ruled out, under objection, and plaintiff's counsel remarked:

"There is no law of this State that permits a father-in-law to take away a husband."

Another witness for the plaintiff was asked, on cross-examination:

"You know that in that church that [the marriage] meant no salvation for her [the plaintiff], and you did not object to that?"

This also was ruled out. The object of the testimony appears to be that it tended to rebut the testimony of the witnesses that plaintiff's family did not object to the marriage. We think the ruling of the court that this testimony was too remote for that purpose was correct.

The statement of the plaintiff's counsel was ill advised, but it is not of sufficient importance to justify a reversal of the case.

4. The defendant's wife, a witness in his behalf, testified that she objected to the marriage, and was asked to state what her objections were. The question was properly excluded. Her objections could have no possible bearing upon the issue, viz., the alienation of the husband's affections by the defendant.

5. On cross-examination of defendant's wife counsel for plaintiff asked:

"So that the extent of her sinning at that time against the Rice household was by attending church again?"

The answer was allowed under objection and exception. This was followed by the question:

"Didn't you think a person in this country ought to be allowed, under reasonable restrictions, to embrace what religion as seemed to them to be proper?
"A. Yes, sir."

After it was answered, counsel for defendant objected to it as immaterial and irrelevant, and the court held the question to be improper. Both questions should have been excluded.

6. In the winter after the separation, which occurred in October, the defendant's wife had a conversation with a Mrs. Owens, in Kalamazoo. On cross-examination the following question was asked her:

"Do you recollect having a conversation with her in which you said that you were waiting for Lem to come and take you home; that you supposed Julia had got a

hold of him somewhere, and was trying to coax him to live with her again, but that was all the good it would do her,—that Lem should never live with her any more?"

This was answered under objection, and she denied saying that her son should never live with plaintiff again. Mrs. Owens was called in rebuttal, and testified to this conversation. She did not, however, testify that Mrs. Rice said that her son should never live with his wife again, but that she did say:

"I presume that Julia has got him cornered somewhere, but it will never do her any good."

She also testified to other statements which she said Mrs. Rice had made, but about which Mrs. Rice had not been questioned, and they were therefore inadmissible.

The court admitted the testimony for the sole purpose of showing the feeling of the witness Mrs. Rice towards the plaintiff. The substance of the ruling was to hold it competent as affecting her credibility. Any statement made by her of her prejudice or feelings against plaintiff was proper for the jury to consider in determining what weight they should attach to her testimony, and, if she denied making such statement, it would be proper to contradict her by other witnesses. *Attorney General v. Hitchcock*, 1 Exch. 91; *Tolbert v. Burke*, 89 Mich. 145. The difficulty is that the statement testified to by Mrs. Owens does not tend to show any ill feeling or prejudice against the plaintiff. At most, the statement only means that her son would not return to his wife. It does not naturally show any ill will towards her. It was a mere statement of fact, which may have been based upon what her son said and her knowledge of his character.

In view of a new trial, we deem it proper to remark that the proper method of impeachment by proving contradictory statements was not pursued in this case. Time, place, and person must be fixed by the impeaching ques-

tion. The language which it is claimed the witness used must be given, and he asked if he used it. The same question, so far as the language is concerned, must then be asked of the impeaching witness. *De Armond v. Neasmith*, 32 Mich. 231. In this case Mrs. Owens was asked to state the conversation she had with Mrs. Rice at the time and place fixed in the impeaching question. As already shown, she introduced other matter, about which no inquiry had been made of Mrs. Rice. In *De Armond v. Neasmith* it is said:

"When an attempt is made to impeach a witness, there should be no reasonable doubt but that the questions asked the impeaching witness and the witness sought to be impeached are one and the same. It is so easy for witnesses to misunderstand each other, or to forget what was really said, that there should be no chance for dispute in this respect. Fairness to both requires this."

The unfairness of the opposite course is well illustrated in this case. It is fair to remark that no objection to the course pursued was made.

7. The defendant produced and offered to swear the plaintiff's husband as a witness. The court held that he could not be sworn as a witness against his wife without her consent. The court, when objection was made, carefully excluded all conversations between the plaintiff and her husband when the defendant was not present. This right of the defendant to have all conversations which were not in his presence excluded should be carefully guarded by the court. No authorities are cited to sustain the defendant's position. Any testimony from the husband against his wife is clearly within the prohibition of the statute. 3 How. Stat. § 7546. The plain provisions of the statute cannot be avoided by the fact that plaintiff testified to conversations and acts on the part of her husband in the presence of the defendant. Had he been permitted to

testify to these conversations, to contradict her, he would clearly have been a witness against her, and that he cannot be unless he comes within the exceptions in the statute.

8. Nearly all the requests on the part of the defendant for instructions were given, and covered every phase of the case. The court instructed the jury that it was not the duty of the defendant to advise his son not to separate from his wife; that if the husband had made up his mind to leave her if she rejoined the church, and, finding that she had done so, set about leaving her, and the defendant, while he was so doing, advised him that he thought it was best to do so before they had children, there was no liability; that they must find that her husband separated from her because the defendant alienated his affections; that he had the right to object to his son's marrying a Roman Catholic; that he had the right to advise his son that it would be unwise for him to live with her if she again joined the church; that any advice he might give his son after the separation would not afford a cause of action. The court in these instructions is within the rule of *Hutcheson v. Peck*, 5 Johns. 196, which appears to be the earliest case of this character. When a father or mother is charged with the alienation of a husband's or wife's affections, the *quo animo* is an important consideration. The right of the parents to advise their children must be carefully protected, as well as the rights of a husband or wife. We think this was done in the present case.

It was not error to refuse to instruct the jury that the defendant must have been the sole cause of the separation. It was sufficient if he was the effective cause. If it were shown that defendant's wife had also used her influence to cause the separation, this would not relieve the defendant

from the consequences of his own conduct.    One joint wrong-doer cannot defend upon the ground that another assisted him in accomplishing the result.

9. The defendant requested the court to instruct the jury that there was no testimony entitling the plaintiff to recover more than nominal damages, and that there was no facts upon which they could determine what, if any, loss she had sustained, either of the society, assistance, or support of her husband.    This request, as a whole, was properly refused, because it left out entirely the damages resulting from mental anguish, mortification, and injured feelings.    In those actions where damages may be awarded for these and for loss of society, the amount of damages lies in the sound discretion of the jury.    They are not capable of accurate measurement, and it is not necessary to introduce any evidence of value.    When the jury have before them the social standing and character of the parties, and the circumstances surrounding the wrong done, they have all that is proper and necessary upon which to find a verdict.    Had the defendant requested the court to instruct the jury that there was no evidence upon which they could find a verdict for loss of support and maintenance, it would have been error to refuse it, because there was no evidence of the value of such support.    The sole evidence was the fact that they lived together for six months in a house owned by defendant.    The court instructed them that she was entitled to recover for mental anguish and suffering, mortification and embarrassment, for the loss of her husband's society, and for the loss of his support and maintenance.    It is true that the court said to them that "all these elements of damage, except the loss of support and maintenance, are such that it is not possible to figure them out on any mathematical basis;" but he did not instruct them that there was no basis afforded by the evidence upon which they could determine

the damages resulting from loss of support and maintenance. The verdict ($3,000) was large, considering the condition of the parties, and we cannot say that the jury did not consider and allow for the loss of support.

The judgment must be set aside, and a new trial ordered.

HOOKER, J., concurred with GRANT, J. McGRATH, C. J., concurred in the result.

MONTGOMERY, J. I concur except as to the last point. As there was evidence that plaintiff had in fact been supported by her husband, I think the withdrawal of such support should be considered as an element of damage.

LONG, J., did not sit.

---

COMPETENCY OF HUSBAND AND WIFE AS WITNESSES FOR OR AGAINST EACH OTHER IN CIVIL CASES.[1]

The following note summarizes the legislation and collects the cases bearing upon the subject suggested in the above heading:

### SUMMARY OF LEGISLATION.

1. Act No. 125, Laws of 1861, taking effect March 11, 1861, which made the parties to suits competent witnesses, contained the following provision:

"A husband shall not be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent; nor shall either, during the marriage or afterwards, be, without the consent of both, examined as to any communication made by one to the other during the marriage; but in any action or proceedings instituted by the husband or wife in consequence of adultery the husband and wife shall not be competent to testify."

2. Act No. 84, Laws of 1869 (How. Stat. § 7546), taking effect July 5, 1869, amended the 1861 statute so as to make it read as follows:

"A husband shall not be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent, except in cases where the husband or wife shall be a party to the record in a suit, action, or proceeding where the title to the separate property of the husband or wife so called or offered as a witness, or where the title to property

---

[1] As to their competency in criminal cases, see *People v. Gordon*, 100 Mich. 518, and note.

·derived from, through, or under the husband or wife so called or
offered as a witness, shall be the subject-matter in controversy
or litigation in such suit, action, or proceeding, in opposition to
the claim or interest of the other of said married persons, who is
a party to the record in such suit, action, or proceeding, and in all
such cases such husband or wife who makes such claim of title,
·or under or from whom such title is derived, shall be as competent
to testify in relation to said separate property and the title there-
to, without the consent of said husband or wife who is a party to
the record in such suit, action, or proceeding, as though such
marriage relation did not exist; nor shall either, during the mar-
·riage or afterwards, without the consent of both, be examined as to
any communication made by one to the other during the marriage;
but in any action or proceeding instituted by the husband or wife
in consequence of adultery the husband and wife shall not be
·competent to testify."

3. Act No. 155, Laws of 1883 (How. Stat. § 6260), taking effect
September 8, 1883, amended the statute as found in the Revised
Statutes of 1846, which provides that "no decree of divorce, or of
the nullity of a marriage, shall be made solely on the declarations,
confessions, or admissions of the parties, but the court shall, in
·all cases, require other satisfactory evidence of the facts alleged
·in the bill for that purpose," by striking out the words, "or of the
·nullity of a marriage," and adding the clause, "but either party
may, if he or she elects, testify in relation to such facts: *Provided*,
however, that the testimony of either party to the action shall be
·taken only in open court, and that such testimony shall not be re-
·ceived in support or in defense of a charge of adultery."

4. Act No. 211, Laws of 1885 (3 How. Stat. § 7546), taking
·effect September 19, 1885, excepted from the operation of the
statute cases where the cause of action should grow out of a per-
sonal wrong or injury done by the husband to the wife or by the
wife to the husband, or out of the refusal or neglect of the hus-
band to furnish the wife or children with suitable support within
the meaning of Act No. 136, Laws of 1883.

### GENERAL RULES APPLICABLE TO THE SUBJECT.

For cases construing the statute generally, see:

1. *Hunt v. Eaton*, 55 Mich. 362, 366, holding that the statute
·aims to protect all those private confidences which the relation
of husband and wife holds as sacred, the disclosure of which
might introduce strife, malevolence, and discord into the married
life, and includes every communication between them other than
such as involves the title to the separate property of either when.
it becomes necessary to resort to litigation to obtain, secure, or
protect the rights of either to such separate property.

2. *Carter v. Hill*, 81 Mich. 275, 279, holding that the statute
was intended to subserve a wise public policy; that its purpose is
to preserve with sacredness the confidences of the marriage state,

and to render it impossible for either husband or wife to speculate upon the other's dishonor, relying upon their own testimony to make or support a case; that such purpose is salutary, and it is the duty of the courts to see that the statute is not disregarded.

ILLUSTRATIVE CASES.

For cases applying the statute, or some portion of it, to a given state of facts, see:        •

*Crim. Con. Cases.*

1. *Egbert v. Greenwalt*, 44 Mich. 245 (decided October 6, 1880), where the testimony of the husband and wife was received for the purpose of showing that they had no sexual intercourse at the time the child, which the husband alleged was the fruit of the unlawful intercourse, was begotten, and that the wrongful act of the defendant must have been the occasion of the wife's condition. And it was held that the evidence was not admissible.

2. *Mathews v. Yerex*, 48 Mich. 361 (decided June 7, 1882), and *Reynolds v. Schaffer*, 91 Mich. 494 (decided May 6, 1892), holding that a wife, during the continuance of the state of marriage, is not a competent witness for her husband in a suit brought by him for criminal conversation.

3. *Perry v. Lovejoy*, 49 Mich. 529 (decided January 5, 1883), holding that the rule of the common law, making a wife *absolutely* incompetent to testify in an action brought by the husband for enticing the wife away and alienating her affections, is modified by the statute so as to make her competent (if the charge of adultery is not involved) in case the husband consents to her testifying, but without such consent the common-law rule remains unchanged.

4. *Gleason v. Knapp*, 56 Mich. 291 (decided April 9, 1885), where a wife, after securing a divorce, remarried. The first husband sued the second husband for criminal conversation. And it was held that the wife's divorce proceedings, being followed by a decree which established that she had a sufficient cause of grievance at the earliest date when plaintiff attempted to show any grievance, must be regarded as a bar to any cause of action for that grievance, if it existed; that, if plaintiff had such a cause of action as asserted, it would not only have been admissible in evidence in the divorce suit, but it would have been an absolute and perfect defense to it; that there was nothing on plaintiff's own showing which left him anything to go to the jury upon, as he introduced the divorce proceedings, and without showing them he could not have been offered as a witness at all.

5. *Carter v. Hill*, 81 Mich. 275 (decided June 6, 1890), where the plaintiff testified in his own behalf to important facts, affecting

the charge of adultery made against the defendant. And it was held that the plaintiff was not a competent witness for any purpose when the question of his wife's adultery was involved.

6. *Hanselman v. Dovel*, 102 Mich. 505 (decided November 20, 1894), where the suit was brought after the husband had secured a divorce from his wife. And it was held that he was not a competent witness to testify to the charge of adultery.

## Divorce Cases.

1. *Hamilton v. Hamilton*, 37 Mich. 603 (decided November 1, 1877), where the wife was called as a witness. In answer to an objection to her competency, the circuit judge, after remarking that he supposed it was competent for the court to order the parties sworn, overruled the objection, and the wife was allowed to testify in her own behalf. No formal order for her examination was made, nor was any action had which indicated more distinctly than the foregoing remark that the court considered the testimony as being taken under his order. And it was held that the statute established general rules of competency of which the parties might avail themselves, while it left untouched in the court any authority previously conferred to deal in the matter of evidence with special cases; that the statute of 1851 for the organization of the Supreme Court provided that the court might at any time, and in accordance with and for the speedy furtherance of justice, in any suit, either at law or in equity, call upon the parties to such suit, or any witness thereto, to testify orally in open court, and that said court might, by rule, provide for a similar practice in the circuit courts; that under the authority of this statute the Supreme Court, by Chancery Rule No. 99, provided that "in all chancery cases whatever, whether for divorce or otherwise, which are at issue on pleadings and proofs, the court may call upon the parties thereto, or any of them, or any witnesses thereto, to testify orally in open court, and in all cases of divorce, whether at issue or standing on the bill taken as confessed, the court may in like manner call upon the complainant, or any witness thereto, so to testify;" that said rule was still in force, undisturbed and unimpaired by the statute, under which neither husband nor wife could be a general witness on his or her own behalf in divorce cases without the consent of the other; that, though the circuit judge did not expressly call the complainant to the stand as a witness, yet he understood he was proceeding under this rule, and was permitting her to be examined under his discretionary authority, and not because he considered her to be a general witness in the case under the statute; and that this conclusion disposed of all question touching the competency of her evidence.

104 MICH.— 25.

2. *Cross v. Cross*, 55 Mich. 280 (decided November 19, 1884), where the bill was filed on grounds other than that of adultery. The defendant put in a plea denying the marriage. And it was held that, as complainant came before the court asserting herself to be a married woman, and was sworn without the defendant's consent, she was within the prohibition of How. Stat. § 6260, which declares that the testimony of either party to a suit for divorce shall be taken only in open court.

*Cases in Which the Separate Property of the Wife was Involved.*

1. *Jenne v. Marble*, 37 Mich. 319 (decided October 16, 1877), where the plaintiff, as assignee, sued the defendant upon her personal covenants contained in a lease from her husband to her, and for the value of certain farm live stock claimed to have been sold to her by him. The trial court held that the transaction was not such as to create a valid right of action for the husband against the wife, and rendered judgment in favor of the defendant. And in affirming the judgment it was held, among other things, that the disabilities of testimony are entirely inconsistent with the idea that a husband and wife may deal with each other as third persons can; that this is impossible if they cannot testify concerning their contracts.

2. *Hubbell v. Grant*, 39 Mich. 641 (decided November 21, 1878), where a judgment creditor filed a bill to reach property conveyed by a husband to his wife, both of whom were made defendants. The husband was examined as a witness for the complainant in the absence of his wife, and without any objection on the part of her solicitor. And it was held that there may be cases where both the husband and wife are present, and one is called as a witness, where a failure to object might be deemed a waiver, but, in the absence of such party, the silence of his or her solicitor cannot supply the place of actual consent.

3. *Benson v. Morgan*, 50 Mich. 77 (decided January 18, 1883), where a wife sued a firm, of which her husband was a member, for work and labor performed by her for the defendants. The husband was present in court, and was examined as a witness on behalf of his wife, and no objection was made by him to her testifying in the cause. And it was held that the consent of the husband to his wife's so testifying must be presumed, the court distinguishing this case from *Hubbell v. Grant, supra.*, where the wife was not present, and her consent could not therefore be inferred from her silence.

4. *Hunt v. Eaton*, 55 Mich. 362 (decided November 19, 1884), where, shortly after their marriage, a husband promised his wife to repay her for moneys which he desired her to advance to take

care of the house. The advancements were made, and, the husband having repudiated any liability to his wife, she assigned the claim, and the assignee brought suit in his own name against the husband to recover the amount due. On the trial, which occurred while the husband and wife were living together as such, the wife was permitted, against the objection of the defendant, to testify to what occurred between her husband and herself relative to the agreement as to advances and their repayment. And it was held that whether this testimony was competent depended upon the construction to be given to How. Stat. § 7546, in connection with How. Stat. § 6297, which provides that "actions may be brought by and against a married woman in relation to her sole property in the same manner as if she were unmarried;" that by the contract testified to, if made, the relation of debtor and creditor was created, and the debt became and was the separate property of the wife; that she could transfer it by assignment, as she could a like claim against a third person; that, when the title to the separate property of either is in litigation between husband and wife, the statute removes the common-law disability, and permits either to testify to the facts which lie at the foundation of the ownership of the property as fully as if such marriage relation did not exist; that the clause of the statute prohibiting either, during the marriage or afterwards, without the consent of both, being examined as to any communication made by one to the other during the marriage, did not apply to a case of this kind.

5. *Eaton v. Knowles,* 61 Mich. 625 (decided June 17, 1886), where a married woman sued the assignor of a mortgage, purchased for her by her husband as her agent, for an alleged breach of the covenant of the assignor that a certain sum was due on the mortgage at the time of its assignment. The defense rested upon an alleged settlement of the demand sued for, made with the husband as agent for plaintiff. The defendant sought to make out his defense by the testimony of the husband, which was objected to on the ground that he was incompetent to be a witness without the consent of plaintiff, which was not given. The objection was sustained, and the testimony excluded. The court was not asked to, nor did he of his own volition, exercise any discretion which might be vested in him in pursuance of How. Stat. § 6424,[1] and the rules

---

[1] How. Stat. § 6424, which, as originally enacted, provided that "the Supreme Court may at any time, in accordance with and for the speedy furtherance of justice, in any suit, either at law or in equity, call upon the parties to such suit, or any witness thereto, to testify orally in open court, and said court may, by rule, provide for a similar practice in the circuit courts," was amended by Act No. 151, Laws of 1887 (3 How. Stat. § 6424), by adding the proviso

of court, to call upon a party to testify for the furtherance of jus-
tice. And it was held that the court were not called upon to de-
cide whether the lower court ought to or could, under the circum-
stances of the case, have called upon this witness to testify in the
cause, but were satisfied to leave the ruling, where the trial court
left it, under the prohibition of the statute.

6. *Blanchard v. Moors*, 85 Mich. 380 (decided April 24, 1891),
where a bill was filed by a judgment creditor in aid of an execu-
tion levied upon land conveyed by the debtor to his wife prior to
the rendition of the judgment. The wife was sworn as a witness
in her own behalf, and was examined without objection respect-
ing the conveyance to her of the land, her knowledge of her hus-
band's debts, the amount and nature of her property at the time
of her marriage, and what she had accumulated and spent since
her marriage, all with a view of showing on her part that the
property was conveyed to her in part payment of an actual indebt-
edness owing to her by her husband. She was then cross-exam-
ined, without objection, on the part of the complainant for the pur-
pose of showing that the conveyance was voluntary and fraudu-
lent as to the complainant. After the defendant had introduced
her proof, the complainant called her husband as a witness in his
behalf. The solicitor for the defendant objected to the husband.
being sworn on the ground that he was a party defendant, and his
testimony would be against his wife, and therefore incompetent.
And it was held that the objection was well taken; that, though the
wife's separate property was in dispute, the interest of the hus-
band was identical with that of his wife; that, there being no con-
flict between them, the husband was not within the exception in
the statute, and his testimony was incompetent. And it was fur-
ther held that the testimony of the wife, taken in her own be-
half without objection, was admissible.

7. *Berles v. Circuit Judge*, 102 Mich. 495 (decided November 20,
1894), holding that a wife, when garnished in a suit against her
husband, cannot, without his consent, be examined as to transfers
of property made to her by him.

### *Miscellaneous Cases.*

1. *Dawson v. Hall*, 2 Mich. 390 (decided in 1852), where a father
filed a bill to set aside a deed executed to three of his daughters,
on the ground that the deed was never delivered to the grantees.
On the hearing the complainant was permitted to testify to state-

that "no party or witness whose evidence may not be received
under the statutes of the State shall be called upon to testify un-
der the provisions of this section."

ments and admissions of the husband of one of the grantees, who was a party to the record in his own right, and also as guardian of the infant children of his deceased wife. And it was held:

*a*—That, were the wife living, as the interest she acquired by the deed was in her own right,—her separate estate,—she and her co-grantees could no more be bound by the statements and admissions of her husband than they could by his testimony.

*b*—That the declarations of husband and wife are subject to the same rules of exclusion which govern their testimony as witnesses, and that the husband of the deceased grantee could not be admitted as a witness in said suit.

2. *Herrick v. Odell*, 29 Mich. 47 (decided January 29, 1874), where a bill was filed in behalf of the heirs of a deceased person to obtain a release and redemption of certain real estate formerly belonging to the decedent. The divorced wife of the defendant was allowed to testify in behalf of the complainants to the admissions of the defendant made to the decedent during negotiations between them for a settlement. And it was held that the testimony did not relate to any communications between husband and wife, and was not within the prohibition of the statute.

3. *Maynard v. Vinton*, 59 Mich. 140 (decided January 20, 1886), where a husband contested the probate of his wife's will on the ground of undue influence alleged to have been exerted over her by a legatee, with whom, as alleged by the contestant, she had been unduly intimate. On the trial the contestant was allowed to testify to a communication made to him by his wife shortly prior to her death regarding her relations with the legatee. And it was held that the statement, according to the testimony of the witness, was a communication of the most confidential character, made to him by his wife during the marriage, and under circumstances which brought it within the prohibition of the statute; that it was one which, after her death, he could never be permitted to testify to, because it could not then be done with the consent of both; that the privilege is that of the person making the communication, and can only be waived by him or her personally, and that the personal representative has no right to waive it, even in the interest of the estate.

4. *Hitchcock v. Moore*, 70 Mich. 112, 115 (decided April 27, 1888), where, in an action for slander, the plaintiff, upon cross-examination, was interrogated in relation to communications claimed to have been made by him to his divorced wife, who was a daughter of the defendant, during the existence of the marriage relation, and the divorced wife was permitted, against objection, to testify as to what the plaintiff said to her while he was her husband, and

that she had communicated what was said to her father. And it was held that this was error; that the divorce did not release the seal of secrecy enjoined by the statute.