ADAMS .*v.* DETROIT ELECTRIC RAILWAY.

1. TRIAL—IMPEACHMENT OF WITNESS.

In an action for injuries sustained by being thrown from a street car, V., a witness for defendant, on cross-examination denied having stated to A. that plaintiff got on the foot-board of the car, but, before she could get in, the car started, and threw her off.   On rebuttal, A. testified that V. told him that plaintiff was getting on the car, and was partly on, and the car started up suddenly, and threw her to the ground. *Held*, that there was a sufficient foundation for the admission of A.'s testimony.

2. SAME—HEARSAY.

But it was error to permit A. to testify further as to V.'s statements concerning the narrow escape of plaintiff's mother, and the habitual carelessness of the conductor, not only for the reason that no foundation had been laid for such testimony, and it was therefore mere hearsay, but because the matters referred to were immaterial, and not a proper subject for impeachment.

3. SAME.

The fact that such incompetent testimony was introduced as an alleged impeachment did not render it any the less prejudicial.

Error to Wayne; Waite, J.   Submitted December 11, 1901.   Decided January 7, 1902.

Case by Marie Adams against the Detroit Electric Railway for personal injuries.   From a judgment for plaintiff, defendant brings error.   Reversed.

*Thomas T. Leete, Jr.*, for appellant.

*Pierce & Kinnane* ( *Oscar M. Springer*, of counsel), for appellee.

HOOKER, C. J.   The plaintiff recovered a verdict and judgment against the defendant for alleged injuries sus-

tained by being thrown from defendant's street car, and the defendant has brought error. Her version of the affair is that she attempted to board a Jefferson-avenue car on the west side of the Boulevard, and was thrown upon the pavement by the sudden and unreasonable starting of the car. A police officer named Vernier, plaintiff's mother, a Dr. Dewar, and one May Clements, a passenger, witnessed the accident, as did also the conductor and motorman, and possibly others. Vernier was called by the defendant, and testified that the car was moving when plaintiff got upon the footboard, and that after getting upon it, and seeing that her mother was not intending to follow her, she stepped off backward and fell, the car being still moving. The same evening he made a report of the accident, in the course of his duty. Upon cross-examination the following occurred:

" *Q.* Didn't you tell this plaintiff's brother, Mr. Adams, when he had the interview with you, that you witnessed the accident; that the car came along there, and stopped to take on passengers; that the young lady got hold of the car, and got upon the footboard, and, before she could get in, the conductor started up the car and threw her off?

"*A.* I did not.

" *Q.* Did you tell him anything like that?

"*A.* No, sir.

"*Q.* Didn't he upon that occasion, after you made a statement of that kind to him such as I have detailed,— didn't he ask you then and there what you meant by filing the report that you did at the police station?

"*A.* No, sir.

"*Mr. Leete:* I object to the question as assuming that the witness said this when he denies having said it.

"*The Court:* He says no.

"*Q.* The interview that you had with the plaintiff's brother— (To a person in the audience): Stand up. Is this the young man?

"*A.* Yes.

"*Q.* Is it not a fact that the interview that you had with him about this accident took place within 30 days from the date of the accident?

"*A.* I think not.

"*Q.* Do you swear that it was not?

"*A.* I know it wasn't.

"*Q.* You know that it wasn't?

"*A.* To the best of my knowledge.

"*Q.* Did you have more than one interview with him about this accident?

"*A.* That is all.   Just the one.

" *Q.* Did you make this remark on Wednesday afternoon, during the progress of this trial, in the presence or within the hearing of the gentleman who is sitting on the ·end of this jury (pointing to a juryman): 'Yes, sir; they all turned in a good play?'

"*A.* I did not.   I didn't say anything of the kind.

" *Q.* What did you say?

"*A.* I did not say anything.

"*Mr. Leete:* I object to it as incompetent and immaterial.

" *The Court:* Find out whether he said anything in the presence of the juror, or talked with the juror about the case.   That is the only point that is material here.

" *Q.* Did you say anything or make any remarks that any member of this jury might have heard on Wednesday afternoon, while you were in the public urinal in this building?

"*A.* I don't know that I did.

" *Q.* You don't know?

"*A.* I don't remember speaking to anybody in the urinal, or anywhere else, about the case."

. On rebuttal, Adams was interrogated and testified as follows with reference to this alleged interview:

"*Q.* Did you ask him about how this accident happened?

" *A.* Yes.

" *Q.* Did he tell you?

"*A.* Yes, sir.

" *Q.* Will you state now what he said to you upon that occasion as to how the accident happened?   (Objected to as incompetent and immaterial.)

" *The Court:* Take the answer.   (Defendant excepts.)

" *A.* He said that my sister was getting on the car, and was partly on, and my· mother was standing right behind her, with her hand upon the handle bar; and the car started up suddenly, and threw my sister to the ground; and my mother would have been hurt, too, if he hadn't hollered to her, 'Let go!'

" *Q.* Did he say anything to you, upon that occasion, about the conductor's action in starting the car ? ( Same objection.   Overruled.   Defendant excepts.)

" *A.* He said something about other accidents been happening there.   He said the conductor was altogether too fast in starting cars at that point."

The last question and answer should not have been permitted.   The proper method of impeachment was not followed, but to and including the testimony that "the car started up suddenly, and threw my sister to the ground," the answer was admissible, as a foundation for it had been laid.   It was not competent for the witness to state that his mother narrowly escaped.   Neither was it proper to draw out the statement about other accidents.   It was hearsay, and immaterial to the case, and could not properly have been made the subject for an impeachment. Counsel would not have attempted to show this fact in making plaintiff's case, both because he would have known it to be hearsay, and because proof of former accidents would not have been admissible to prove the one sued upon.   It is no less damaging because introduced as an alleged impeachment.   See *Rice* v. *Rice,* 104 Mich. 379 (62 N. W. 833); *De Armond* v. *Neasmith,* 32 Mich. 231; *People* v. *Thompson,* 122 Mich. 411 (81 N. W. 344).

The judgment must be reversed upon this ground, and a new trial granted.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.