## WORKMAN v. WORKMAN.

[No. 6,449.   Filed October 28, 1908.   Rehearing denied January 12,
1909.   Transfer denied March 10, 1909.]

1. HUSBAND AND WIFE.—*Alienation.—Parent and Child.—Evidence.
—Sufficiency.*—Evidence, in an action by a wife against her
father-in-law for alienation, showing that defendant advised
plaintiff's husband to stop paying life insurance, which he did,
that defendant told plaintiff's husband that she had been intimate
with another, that he told her two children that she was a "lewd
character," "came from a low element," and was "ignorant," that
he asked her husband to tell her lawyers that there was noth-
ing in the case, that defendant wanted the husband and wife to
go to school, the son refusing, and that defendant advised them
to live on defendant's farm, which the husband refused to do,
and that the husband lived with the plaintiff after the bring-
ing of the action, subsequently abandoning her, does not support
a verdict for alienation.   p. 383.

2. HUSBAND AND WIFE.—*Alienation.—Action by Wife.*—A wife may
maintain an action for the alienation of her husband's affections.
p. 386.

3. HUSBAND AND WIFE.—*Alienation.—Parent and Child.—Malice.*—
In an action by a wife against her father-in-law or mother-in-law
for the alienation of her husband's affections, the defendant's in-
tent is the principal question, the presumption being that it is
good.   p. 386.

4. PARENT AND CHILD.—*Continuance of Relationship.*—The relation
of parent and child, and the correlative obligations thereof, do
not cease upon the marriage of the child, the presumption being
that the parents' acts toward the child are for the good of the
child.   p. 386.

From Martin Circuit Court; *Milton S. Hastings,* Special
Judge.

Action by Cornelia Workman against William H. Work-
man.   From a judgment for plaintiff, defendant appeals.
*Reversed.*

*Fabius Gwin* and *James T. Rogers,* for appellant.

*Frank E. Gilkison,* for appellee.

COMSTOCK, J.—Appellee recovered judgment for $2,500
against appellant (her father-in-law), for the alienation of
the affections of her husband.

The only errors discussed are the following, which arise upon the appellant's motion for a new trial: "The verdict is not sustained by sufficient evidence, and is contrary to law; the evidence fails to establish the material averments of the complaint; the damages awarded are excessive."

The complaint is in one paragraph, and avers that the plaintiff is the wife of William J. Workman, the only child of the defendant; that they were married in 1882, have two children, who are both married and have homes of their own; that for the greater part of the time since they were married, until matters complained of happened, they lived upon and farmed the lands of the defendant; that plaintiff's husband is a man easily influenced, and the defendant a man of strong and domineering mind; that since May, 1906, and a long time prior to that time, the defendant, knowing his influence over his son, solicited, and maliciously persuaded him to separate from and abandon her; that by his domineering influence, and by his talk derogatory of the character of this plaintiff, said defendant maliciously estranged her husband from her, and maliciously caused him to abandon her in May, 1906, and take up his abode with the defendant; that defendant has since said time exercised an influence over her husband and prevented his returning to her; that defendant gave plaintiff notice to leave defendant's farm, upon which she lived, and, to avoid being ejected therefrom, she left the same and went to her father's, having no other home provided for her; that defendant is a man of much property and influence, and plaintiff alleges that by reason of the wrongful and unlawful acts of defendant she has been deprived of the society, love and companionship of her husband and of a home and support.

Appellee married the son of appellant in 1882, without the knowledge of appellant. With the exception of about six months, during which time they lived in Spencer county, Indiana, they lived for twenty-three years on the lands of appellant and near his home. During all

that time visits were exchanged, and the relations between the families were friendly. About six years before the bringing of this action appellant moved to Loogootee, and appellee and her husband moved into the house vacated by appellant, occupying the same and the farm upon which it was located as tenants of appellant. At the end of the period appellee's husband refused to live longer on the farm and wanted to go to Loogootee with a view of keeping a livery stable. Appellant importuned him to remain on the farm, and told him that he would rather that he and "Corny" (appellee) would stay there than any one else; that "Corny" would take good care of the house. Appellee's husband refused to remain, and induced the party who succeeded him as tenant to take the place. He selected a house in Loogootee, but never moved into it. In May, 1906, appellee's husband left without telling her, taking with him his wearing apparel, which he left at his father's house. His father did not know of his intention to bring said apparel there and did not know that it had been left there until told of it by his wife. Appellee's husband returned to her in about a week. He was at his father's, taking his meals and lodging there at intervals for three or four weeks, when he went to West Baden, Indiana, where the evidence leaves him. Appellee's husband carried life insurance in a fraternal association, with his wife as beneficiary, for ten years. Appellant advised him to drop it, saying that it would do him no good; that he would have to die to get the money. He said: "Which is just right," and permitted the insurance to lapse. There is ample evidence to show that appellee and her husband cohabited as husband and wife up to and including the day this action was commenced; that her husband sold his personal property in August, 1906, the sale amounting to $2,000; that he received one-half in money and deposited $1,000 to her credit, which she still has. There is evidence that the appellant twenty-three years ago said to appellee's husband that her father made a man employed

by him leave his house because he and appellee "were having too much fun." There was contradicted evidence that appellant said in the presence of appellee's husband and daughter, Eva, that appellee "was a lewd character and came from a low element, was ignorant and had no schooling." The same statement was made to appellee's son, John, when no one else was present. This was about five years before the alleged separation. Said Eva and John were the only children of appellee and her husband. They are both married. Appellant sent them to school and attempted to give them a liberal education. After these statements concerning their mother are alleged to have been made, no change was made in the friendly relations which had always existed between them and appellant. After the commencement of the action, appellant asked the husband of appellee to tell the lawyers that there was nothing in it, on which occasion the son said that he did not think there was much in it. After the marriage of the appellee to her husband, appellant, whom the evidence shows to have been earnestly in favor of education, wanted to send his son and daughter-in-law to school. They refused. Appellant wanted the son to remain on the home farm. He refused to do so. The only two instances given in which these parties differed, the son had his way and was not dominated by his father. In the first instance, the son sold his "home place" against the wish and advice of appellant; in the second, he refused to remain on appellant's farm. There is no evidence of any act or word on the part of the appellant to cause his son to abandon appellee, unless the reference to her character had that effect. The advice upon the insurance, so far as we know, may have been sound. The purpose of such statements will not be presumed to have been bad, and appellant's subsequent conduct shows that they were not made for the purpose of bringing about the separation. The evidence shows affirmatively that had they

done what he requested them to do they would have continued to live together on his farm. When the action was commenced cohabitation had not ceased. Appellee had not been deprived of her support. The evidence does not indicate that there had been any change in the relations and feelings of the husband and wife, apart from the fact that there had been a few weeks in which the presence of the husband had not been constant. During the sickness of appellant he had wanted appellee's husband with him to do "the chores." He said that the rest of them—appellee and her married daughter and husband, who were living together —could take care of themselves.

The authorities are not in accord in regard to the rights of the wife at common law to maintain an action for damages suffered by reason of another's malicious aliena-
2.  tion of her husband's affection from her. In Indiana the right is no longer questioned. *Postlewaite* v. *Postlewaite* (1891), 1 Ind. App. 473; *Railsback* v. *Railsback* (1895), 12 Ind. App. 659; *Adams* v. *Main* (1891), 3 Ind. App. 232, 50 Am. St. 266; *Reed* v. *Reed* (1893), 6 Ind. App. 317, 51 Am. St. 310; *Haynes* v. *Nowlin* (1891), 129 Ind. 581, 14 L. R. A. 787, 28 Am. St. 213; *Wolf* v. *Wolf* (1892), 130 Ind. 599; *Holmes* v. *Holmes* (1893), 133 Ind. 386.

When a father or mother is charged with the alienation of a husband's or wife's affection, the *"quo animo"* is the important consideration. From what motive did the
3.  parent act? Was it malicious, or was it inspired by a proper regard for the welfare and happiness of the child? The reciprocal obligations of parent and child last through life, and the duty of discharging them does
4.  not cease by the marriage of the child. *Tucker* v. *Tucker* (1896), 74 Miss. 93, 19 South. 955, 32 L. R. A. 623; *Rice* v. *Rice* (1895), 104 Mich. 371, 62 N. W. 833. The motive of a parent in harboring or sheltering the child is pre-

sumed to be good until the contrary appears. Stewart, Husband and Wife, §78. In law, a father's house is always open to his children, whether they be married or single. Cooley, Torts, 224; *Hutcheson* v. *Peck* (1809), 5 Johns. (N. Y.) *196. It has been held that evidence that defendant disapproved of his son's marriage, stated it to be his wish that the son might be extricated from the alliance, and that he refused to receive plaintiff at his house, but received his son, does not alone justify a recovery, as defendant will be presumed to have acted from paternal solicitude, and not for the purpose of separating plaintiff from her husband. *Pollock* v. *Pollock* (1894), 29 N. Y. Supp. 37, 9 Misc. (N. Y.) 82. The verdict is not sustained by sufficient evidence, and is contrary to law.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.