### GORNETZKY *v.* GORNETZKY.

1. TRIAL — VOIR DIRE EXAMINATION — LIMITING EXTENT, DISCRETIONARY.

Upon the preliminary examination of jurors as to their competency to sit in a case, the extent of examination to be permitted attorneys is largely in the discretion of the court, the exercise of which will not, in reviewing the cause, be disturbed although defendant's counsel was denied the privilege of asking certain questions tending to exhibit the feeling or sympathy of a juror towards the plaintiff or witnesses mentioned by defendant's counsel, who had theretofore fully ex amined the jury, so far as the record showed, relative to any possible bias or prejudice.

2. SAME—CROSS-EXAMINATION—IMPEACHMENT.

The trial court did not err in refusing to receive in evidence

the files of another cause for the purpose of impeaching a witness for plaintiff, by showing that his lawyer, in the collateral proceeding, was not the one stated by witness; the matter was not so material to the issue as to justify admitting the evidence.

3. SAME—EXAMINATION OF WITNESSES.

Defendant, against whom an action had been commenced for alienating the affections of his son, plaintiff's husband, was not entitled to show what he had done to induce the son to discontinue a divorce suit, at a time subsequent to the commencement of the action by the wife.

4. SAME—ALIENATION OF HUSBAND'S AFFECTIONS.

Nor was his testimony relative to his wife's feelings competent, when she was a witness and fully covered the point.

5. SAME—ARGUMENT—STATUTES—WITNESSES.

Defendant's counsel was properly prevented from commenting unfavorably in argument upon the fact that plaintiff had refused to permit her husband to testify, claiming that the testimony was privileged under section 10213, 3 Comp. Laws, 5 How. Stat. (2d Ed.) § 12857.

6. HUSBAND AND WIFE—ALIENATING AFFECTIONS OF HUSBAND.

In an action against the parents of plaintiff's husband for alienating his affections from plaintiff, the court sufficiently covered a request to charge that defendants were not chargeable with the husband's determination to live apart from her, if he had so decided before they advised with him, by instructing the jury in the general charge that the father and mother were entitled to counsel with their son, that if they acted, in advising with him, out of proper motives, and without malice, they were not liable, that if they caused his affections to be alienated from his wife, and their motives were malicious or improper, or caused by dislike or jealousy of plaintiff, they were liable, that if the jury found the husband, not defendants, was to blame, or anything except malicious interference on the part of defendants caused the estrangement, the verdict must be for defendants.

7. SAME—CONDUCT OF COURT—CHARGE—TRIAL.

In advising the jury not to be swayed by sympathy or prejudice, the court did not commit reversible error by intimating that the case appealed to his sympathies, but that such influence should not affect the verdict of the jury; nothing being said to show in whose favor the sympathy of the court was aroused.

Error to Wayne; Murfin, J. Submitted April 15, 1912. (Docket No. 89.) Decided October 7, 1912. Rehearing denied June 2, 1913.

Case by Anna Gornetzky against Harris Gornetzky and Matilda Gornetzky for alienating the affections of plaintiff's husband. Judgment for plaintiff. Defendants bring error. Affirmed.

*Thomas W. Payne* and *Sloman & Sloman,* for appellants.

*Bumps & Bishop,* for appellee.

Moore, C. J. On November 25, 1909, the plaintiff married Lasser H. Gornetzky, the only son of the defendants. The young people commenced housekeeping in a well furnished, comfortable house owned by the mother of the young husband. It was not long before trouble arose between the young people. On March 14, 1910, Lasser H. Gornetzky commenced divorce proceedings against the plaintiff. On the 6th of April, 1910, the plaintiff commenced this suit against the parents of her husband to recover damages for the alienation of his affections from her. A jury trial resulted in a verdict and judgment in her favor for $3,000. The case is brought here by writ of error.

Eight assignments of error relate to what occurred in the examination of the jurors by counsel for defendants. The record does not purport to contain all that occurred. It shows that the trial judge said to counsel that he had asked the jurors a multiplicity of questions that had nothing to do with the case and a colloquy followed, then the following appears in the record:

"*Mr. Sloman:* Your honor will give me an exception to the statement, and I may state at this time that it is my understanding of the rule that for the purpose of peremptory challenging almost any question that is likely to bear upon the juror's state of mind in an action of this character may be asked.

" *The Court:* My understanding of the rule is that a trial judge has some discretion in the matter. I believe the fewer questions asked the better off it will be all around.

" *Mr. Sloman* (addressing juror): Now, if you should find that _ _ _ _ _ _ _ _ _ _ was in this case, and you knew him, would that affect your mind ?"

The court held the juror need not answer the question and made a like ruling to the following question:

"*Mr. Sloman* (to a juror): If the plaintiff would be on the stand, would your sympathies be likely to be aroused so that you could not give the defendant a fair show when you came to hear his testimony ?"

Counsel take the same position in this court as to their right that they took in the court below, quoted above, citing *Monaghan* v. *Insurance Co.*, 53 Mich. 246 (18 N. W. 801). In disposing of that case, the court said, among other things:

" A party has a right to a certain number of challenges, and, in order to exercise this right understandingly, it is proper for him to ascertain as nearly as practicable the disposition of the juror toward him, and towards the subject-matter in controversy; and any inquiry within reasonable limits which tends to bring to light any bias or prejudice entertained by a juror is proper."

It would perhaps have been well to allow these questions. It is evident, however, that counsel had made so many inquiries of the jurors that the court became impatient, and it does not appear that any question which bore upon the bias or prejudice of the juror was excluded. We cannot say upon this record that there was such an abuse by the trial court of his discretion as to call for a reversal of the case. This ruling is not in conflict with *Towl* v. *Bradley*, 108 Mich. 409 (66 N. W. 347); *People* v. *Peck*, 139 Mich. 680 (103 N. W. 178). It is said the court erred—

"In restricting the cross-examination of the witness Herstein concerning when the suit was brought by the plaintiff's husband against him,   *   *   *   in refusing to permit in evidence the files in the case of *Lasser Gornet-*

*zky* v. *Jacob Herstein,* a suit for alienation of affections, to show that the defendant appeared therein by Mr. Alex. J. Groesbeck, as his attorney."

It was the claim of the defendants that the trouble which existed between the young people was due to the officiousness of an uncle of the plaintiff, Mr. Jacob Herstein, and that the inquiries should have been allowed. Counsel examined this witness at great length. Ten or twelve pages of his cross-examination, mostly in narrative form, appear in this record. In this cross-examination it developed that the witness, at her request, had introduced the plaintiff to a lawyer who afterwards commenced this suit. The witness was then examined in relation to the same lawyer being his attorney in a case commenced against the witness by Lasser H. Gornetzky for alienation of the affections. It was afterwards sought to contradict him by the introduction of the files in the last-named case. The record shows, when the last-named case was commenced, the records and files did not relate to a matter so material to the issue in the instant case as to make them admissible. See *Rice* v. *Rice,* 104 Mich. 371 (62 N. W. 833).

Many of the assignments of error relate to the rulings of the court in the cross-examination of the plaintiff. She was cross-examined at great length, and none of the rulings in relation to her testimony constitute reversible error.

Several assignments of error relate to the following:

"In refusing to permit said witness (defendant Harris Gornetzky) to testify as to what he did to induce his son to discontinue the divorce suit. * * * In striking out the answer to the question: '*Q.* Now, as far as you know, did your wife know anything about it?' In striking out the answer of said witness to the question: '*Q.* Is that true, so far as you know, of your wife's feelings in the matter?'"

The first of these questions relates to something which occurred after this case was commenced. The other questions were not proper in view of the fact that the wit-

ness and his wife both testified in detail as to what each of them did and did not do.

Error is assigned because the court refused to permit counsel for defendants to make an argument to the jury based upon the fact that plaintiff refused to consent to allow her husband to testify; citing *Zimmerman* v. *Whiteley*, 134 Mich. 39 (95 N. W. 989). A reference to that case will show that counsel here were allowed to go as far as was done in that case. The statute upon that subject is clear. Section 10213, 3 Comp. Laws (5 How. Stat. [2d Ed.] § 12857). It has been construed many times. See *Maynard* v. *Vinton*, 59 Mich. 139 (26 N. W. 401, 60 Am. Rep. 276); *Carter* v. *Hill*, 81 Mich. 275 (45 N. W. 988). The purpose of the statute would be defeated if the contention of counsel is to prevail.

A group of assignments of error relate to the refusal of the court to give several of defendants' requests to charge; counsel citing *Rice* v. *Rice*, 104 Mich. 371 (62 N. W. 833). They relate to the subject contained in the following request:

"If you should find from the evidence that Lasser Gornetzky, acting upon his own desires in the premises, had determined to live apart from his wife, and that having reached such determination he proceeded to carry it out; and if you should find from the evidence that after he had formed such determination, his parents consulted with him and they or either of them advised him in relation thereto, then I charge you there would be no liability no matter what the character of such advice was, and your verdict would be of no cause of action."

The court charged the jury in part as follows:

"But, if his affections have been alienated, you will then pass to a consideration of the question as to whether or not the alienation of these affections was due to these defendants or either of them. Now, I say to you, gentlemen, at the outset, there can be no question whatsoever but that a father and mother, or a father and mother-in-law, have a right to give advice and suggestions and help to their son, or to their daughter-in-law. How far that will

174 MICH.—32.

498 MICHIGAN REPORTS. [Oct.

go, or how far that must go, is, of course, entirely a matter of taste. But if they have been advising, assisting, from proper motives, and with a natural desire of a parent to be of assistance to a son or daughter, even though their motives may be mistaken, and even though they may have done things in a way that you or I would not have done, if their motives have been honest, proper motives, then, obviously, there can be no cause of action; merely alienation of affection, unless it is brought about through malice, does not give rise to a cause of action. In other words, if the father-in-law and mother-in-law, complained of in this case, were prompted in what they were doing by honest and proper motives, then, even though the result of their conduct estranged this young couple, there can be no liability, but if they were actuated by improper motives, through a desire to stir up trouble, through a jealousy of their son, through a desire to get him back, or because, improperly, they have formed a dislike towards this plaintiff, or for any other motive which is not proper, and which would not be honorable, in other words, if it was done maliciously, then, if there had been an alienation of affection, and they are to blame for it, under those circumstances, they would be liable, or either of them would be liable, as you find the case to be. So, gentlemen, in that connection, I say this to you, it is not necessary that they should be the sole cause of the alienation of the affections, but, if maliciously they were the real, final cause of bringing about an estrangement between these people, they would be liable. But, if they are not, gentlemen of the jury, if you find that the estrangement between these young people, if there was one, was brought about in some other manner entirely, manifestly, these defendants would not, nor would either of them, be liable in this case. You will recall that it is the claim of these defendants that an uncle, Mr. Herstein, by name, I think, is to blame for this trouble. If you find from the evidence in this case that he, rather than they, are to blame, manifestly they cannot be liable. If you find anything else was to blame rather than a malicious interference by these defendants, or either of them, these defendants cannot be liable. So, gentlemen, to recapitulate briefly, you will find, *first*, whether or not there has been any alienation of the affections of this plaintiff's husband; *second*, whether that was brought about by the malicious interference and conduct of these defendants, or either of

them. If it was, they are liable. Otherwise, they are not liable. * * * In this case, as in all cases of this description, the burden of proof is upon the plaintiff. That is to say, upon the controverted questions of fact involved, she must make out her case before you by a fair preponderance of the evidence. I am requested to charge you, and I think it is the law, that the natural presumption is that a father and mother in what they do for a son are doing it through proper, conscientious motives, and the burden of proof is upon this plaintiff to show you by a fair preponderance of the evidence that if there has been an estrangement, and if it was brought about through the interference and intervention of these defendants, or either of them, that that interference, and that intervention, was not from proper motives but from malicious motives. Now, gentlemen of the jury, when we say the burden of proof is upon a party, that means, not necessarily that that party must produce for you to hear and see, but they must produce before you such testimony as satisfies your minds that they have the right of the case. When they have done that, then they have maintained that burden of proof that the law requires."

This feature of the case was fully covered in that portion of the general charge we have quoted.

In his charge to the jury the judge used the following language:

"This is a case, gentlemen of the jury, that has peculiar features connected with it. It is a case that confessedly appeals to our sympathies, and it is a deplorable case, as you probably have heard me suggest. But, gentlemen of the jury, these are not considerations that may enter into our deliberations as jurors and judges in the trial of a lawsuit, no matter what our sympathy may lead us to think. Sympathy has no place in the trial of a lawsuit, and in making up your minds as to what your verdict shall be, gentlemen of the jury, do not permit that element to enter into your deliberations whatsoever. Do not permit your deliberations on the testimony in this case to be influenced in the slightest degree by the result or effect of your verdict. If this testimony in your opinion warrants a verdict, it is your duty to bring in a verdict as the testimony tells you to bring it in, regardless of what you may think the consequences of any verdict may be. I say that to you, gentlemen, because of the peculiar character of this case,

which has appealed to me very much, and undoubtedly has appealed to all of you."

Counsel predicate error upon five lines of this portion of the charge. The argument is:

"While it is proper for the court to charge the jury that they should not be influenced by sympathy or prejudice in the case, there were peculiar circumstances in this case that necessitated the court's refraining from expressing his own feelings in the matter. It is quite fair to assume that what appealed so strongly to the court was the alleged hardships and sufferings of the plaintiff as well as the distressful situation she claimed the defendants had placed her in, as testified by her and her witnesses, as well as the fact that these young people were separated and their home broken up. * * * No inference from this statement could be drawn by the jury in favor of these defendants, and its effect was to place them at a disadvantage, and we submit was likely to and did have a large influence upon their verdict."

There is nothing in what was said to indicate where the sympathies of the court were. Its purpose was manifestly to caution the jury against acting from sympathy and emphasizing the necessity of basing a verdict upon the evidence. We do not think the jury misunderstood.

There are other assignments of error which have had our attention, but we think it unnecessary to discuss them. The case was hotly contested, and we think fairly tried.

Judgment is affirmed.

STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.