WILLIAM C. NEVINS v. ELLA D. NEVINS.

No. 13,387. (75 Pac. 492.)

SYLLABUS BY THE COURT.

1. ALIENATION OF AFFECTIONS—*Pleading.* In an action for the alienation of the affections of a husband or wife, a statement in the petition of the ultimate facts of the alienation and separation is enough, without pleading the acts done and artifices used to accomplish the alienation.

2. ———— *Motive May be Shown.* Testimony which tends to show the motive of the defendant in the efforts made to induce the separation of a husband from a wife may be admitted.

3. ———— *Declarations of Husband Admissible.* The declarations of the husband, although not a party to the litigation, as to his estrangement and separation from the plaintiff are competent to show the effect of the wrongful interference of the defendant and of his attempt to induce a separation.

4. ———— *Defendant Liable, Notwithstanding There Were Other Causes.* In such an action, if the acts done and influences used by the defendant were the controlling cause of the separation the plaintiff may recover from the defendant, although other causes may have contributed in some degree to the result.

5. ———— *Mental Pain and Suffering.* Mental anguish, mortification and injury to the feelings are natural and necessary consequences of the alienation and separation, and a recovery may be had therefor under the general allegation of damages sustained.

6. ———— *Exemplary Damages.* In cases like this, which involve malice and oppression, exemplary damages may be allowed.

Error from Atchison district court; W. T. BLAND, judge. Opinion filed February 6, 1904. Affirmed.

*W. W. & W. F. Guthrie,* and *Crane & Woodburn,* for plaintiff in error.

*C. D. Walker,* and *J. L. Berry,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: On February 13, 1901, after an acquaintance of five years and a courtship of one year, Jacob W. Nevins was married to Ella D. Har-

gis.   At that time he was about twenty-one years old and her age was about eighteen.   Although they appeared to be strongly attached to each other, and the marriage gave promise of happiness, a separation occurred on April 2, 1901.   Very soon after the marriage his parents manifested marked hostility toward Ella, and she charges that her husband became estranged from her by the active and persistent efforts of William C. Nevins, her father-in-law.   She brought an action against him, alleging that he wrongfully, maliciously, and for the purpose of separating her from her husband, enticed and procured him to become alienated in feeling and affection for her by representing to his son, commonly known as Will Nevins, that she was unfit to be his wife ; that she was trifling and good for nothing, incapable of loving him, and quarrelsome, vicious, and unwomanly ; that she was untruthful and deceptive ; that he should abandon her, and that if he persisted in living with her he would disinherit and disown him ; that by means of these and other like misrepresentations and inducements the defendant alienated the affections of her husband and compelled him to take her to the home of her parents against her consent; that by reason thereof she has been driven from her home and has not been permitted to return.   The answer of the defendant was a denial of the averments of the petition and an allegation that the separation was due to the fault of Ella and the members of her family.   Upon the issues joined a trial was had, which resulted in a judgment in favor of the plaintiff below for $2500.

One of the errors assigned is based upon an order permitting the plaintiff to amend her petition before entering upon the trial.   The amendment consisted in the interlineation of words which, it was averred,

the defendant had stated to his son with a view of alienating his affection, to wit: ''That the plaintiff was and had been before her marriage unchaste in her conduct with other men.'' An objection was made to the amendment, but when it was allowed no application for a continuance or postponement was made or suggested by the defendant. It was enough for the plaintiff to plead the ultimate facts as to the alienation of her husband's affections by the defendant, and the acts done and artifices used to accomplish the alienation are not required to be pleaded; indeed, these are largely matters of evidence by which the ultimate facts are to be proved. That being true, the additional averment of another method by which the defendant accomplished his wrongful purpose cannot be regarded as prejudicial. (*Nichols v. Nichols*, 134 Mo. 187, 35 S. W. 577; *French v. Deane*, 19 Colo. 504, 36 Pac. 609, 24 L. R. A. 387; *Williams v. Williams*, 20 id. 51, 37 Pac. 614; *Lockwood v. Lockwood*, 67 Minn. 476, 70 N. W. 784; *Brown v. Kingsley*, 38 Iowa, 220; *Hodges v. Bales*, 102 Ind. 494, 1 N. E. 692.) It was an advantage to the defendant to have a recital of the evidence by which the facts might be proved or from which they might be inferred, and it would not seem that he regarded the additional averment as a disadvantage, as no postponement of the trial was asked for by him because of being unprepared to meet the new phase of the case. Aside from these considerations, the matter of amending pleadings is committed largely to the discretion of the court, and since there appears to have been no abuse of discretion we cannot, in any view, treat the amendment as error.

Complaint is made of rulings on the admission of testimony. It was alleged, and there was testimony tending to show, that the defendant, with a view of

effecting a separation, had stated that Ella sent her sister to Doctor Collins and from him obtained medicine to prevent conception. It was shown that defendant had made statements of this kind to the young husband in the presence of Ella, and when she made a denial the defendant, with much profanity and vile language, declared repeatedly that the statements, were true. She testified that they were without foundation and introduced Doctor Collins, who testified that she had not obtained such medicine from him. The testimony tended to show the animus of the defendant, and to that extent was competent. The doctor lived and practiced in the neighborhood and from him the defendant could have learned the truth. Ella told him that the charge was unfounded, but instead of inquiring as to the fact from the doctor, who could have given him correct information, he recklessly persisted in spreading poison by repeating the falsehood to his son and to others in the neighborhood.

There was objection also to the testimony of the witness Doyle, who had undertaken to effect a reconciliation between the young people. He gave the statements made by Will and Ella when he interceded, and there is objection that these statements were made in the absence of the defendant. The declarations of the young husband, although not a party to the suit, were admissible to show the effect that his father's wrongful interference and misrepresentations had upon his mind. It was competent not only to show the active and persistent efforts of the defendant to alienate his son from Ella, but it was also both proper and necessary to show the effect of such efforts upon the son. For this purpose the testimony was competent. (*Williams v. Williams*, supra.)

There is complaint that statements made by Will to

the same witness, showing the state of his feelings and a disposition to try to live with his wife again, were excluded. It appears that the statements were made some time after the action was brought, and may have been made in preparation for the trial which was soon to occur. The state of his feelings after the separation and after the bringing of the action was not valuable testimony on any issue in the case, and its exclusion was not an error. Immediately following the ruling, however, the court admitted testimony showing that the same statement was made by Will to his wife and the conversation then had between Will and Ella was detailed at considerable length, so that if the declarations had been admissible the ruling would have been without prejudice.

Testimony as to the statements of the defendant to his son were properly excluded within the rule of *Eagon v. Eagon*, 60 Kan. 697, 57 Pac. 942. None of the other objections to the testimony is deemed to be prejudicial or material.

The charge of the court, although attacked, fairly presented the case to the jury. Complaint is made of the refusal of several instructions, stating that even though they found the defendant had committed acts tending to alienate the plaintiff's husband from her, yet she would not be entitled to recover if her own acts contributed to such alienation of affection. It was not a fit occasion and place for introducing the doctrine of contributory negligence. Of course, no recovery could be had unless the alienation and separation were caused by the acts done and influences exerted by the defendant. If his efforts were the controlling cause, however, and without which no separation would have been had, she might still recover, although other causes may have contributed in some degree to the result. (*Rath v. Rath*, 2 Neb. [unoffi-

cial] 600, 89 N. W. 612.) The court, however, did not overlook these requests, and in its charge directed the jury that, before the plaintiff could recover, it must be found that the defendant caused the separation ; that it was done intentionally and knowingly, by some of the causes alleged in the petition, and that, even if he did cause a separation, it would not be sufficient to warrant a recovery unless there was a further finding that he did so maliciously. The jury were also instructed that the law recognizes the right of the father to advise his son as to his domestic affairs, and that he might so advise his son without incurring liability for alienation, if the advice was given in good faith and from worthy motives ; that there would be no liability in such case, even if his advice influenced a separation, and that in such case the motive of the defendant is presumed to be good until the contrary is made to appear from the evidence in the case. We find no reason to criticize the instructions given with reference to an attempted reconciliation between the young people, nor as to the measure of damages.

It is said that the court erred in telling the jury that, in assessing the damages, they might take into consideration the mental anguish, mortification, and injury to her feelings. It is contended that these are special damages which cannot be recovered under a general averment. In cases of this character, as in seduction, the mental anguish, disgrace and injury to feelings are natural and necessary consequences of the alienation and separation. They may be inferred from the malicious injury inflicted by the defendant, and a recovery had therefor under the general allegation of damage sustained. A special averment of damages arising from such injuries is not required. (*Rice v. Rice*, 104 Mich. 371, 62 N. W. 833 ; 19 Encyc. Pl. & Pr. 411.)

The court also instructed the jury as to exemplary damages. No complaint is made of the rule laid down, if such damages may be given in cases of this kind ; but it is contended that such damages are not recoverable, because malice, which furnishes the foundation for such damages, is a necessary ingredient of the principal cause of action, without which no recovery for compensatory damages can be had, and that to allow both compensatory and punitive damages, based on malice, would in effect be double damages for a single cause. There is no duplication of damages or any double allowance for the same cause. The fact that the wrong for which the action was brought is essentially malicious does not change the rule. A party is entitled to full compensation for actual losses resulting from a wilful and malicious wrong, but exemplary damages are allowed upon a wholly different principle. They rest upon the right to punish a wrong-doer, and not on the right of an individual to compensation for wrongs done to him.

"They are not given upon any theory that the plaintiff has any just right to recover them, but are given only upon the theory that the defendant deserves punishment for his wrongful acts, and that it is proper for the public to impose them upon the defendant as punishment for such wrongful acts in the private action brought by the plaintiff for the recovery of the real and actual damages suffered by him." ( *Schippel v. Norton*, 38 Kan. 567, 572, 16 Pac. 804.)

In this case, taking the testimony which was accepted by the jury, there was more than malice involved in the action of the defendant. His conduct was wanton, high-handed, and oppressive, and it is well established by a long line of decisions in this state that wherever the elements of fraud, malice, gross negligence or oppression mingle in the contro-

versy the law allows exemplary damages. (*Cady v. Case*, 45 Kan. 733, 26 Pac. 448, and cases cited.)

To sustain the verdict, it is unnecessary to attempt a detailed statement of the acts of the defendant. It is sufficiently shown that he had and exercised a dominating influence over his son, and that he had determined to effect a separation of the young people, with or without justification. The son hesitated in believing the imputations made by his father against the conduct and character of his wife, sometimes protesting and sometimes crying, but he appeared to lack the manliness and courage to resent them or to protect her. He weakly yielded to the aggressive conduct of his father, who compelled him to put his young wife in a wagon and take her to her parents, and to be sure that there was no change of purpose or turning back he accompanied them, ordered her out of the wagon at her mother's home, and in a cruel and abusive manner charged that she had been guilty of gross wrongs and offenses. It is but fair to the defendant to say that he denied many of the things attributed to him, but the testimony of the plaintiff below was accepted by the jury and is sufficient to support the verdict. From the testimony, Ella appeared to be very much attached to her husband, and there was no attempt to prove her guilty of any of the things with which her father-in-law had charged her. Nothing in the affidavits presented for the purpose of obtaining a new trial warrant the setting aside of the verdict, nor do we find any error which would justify a reversal.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.