LENORA BURCH, *Appellant*, v. MARY J. GOODSON,
*Appellee.*

No. 17,112.

### SYLLABUS BY THE COURT.

1. HUSBAND AND WIFE—*Alienation of Affections.* In an action
by a wife for the alienation of her husband's affections it is
error to sustain a demurrer to the plaintiff's evidence when it
shows continuous, persistent and successful efforts on the
part of another woman to monopolize the company of the
husband, resulting in his increasing neglect and final abandon-
ment of his wife and children.

2. DAMAGES—*Alienation of Affections.* The law no longer hesi-
tates to award damages against one who by continued willful
machinations succeeds in wholly or partially depriving a
wife of the affections which otherwise her husband would have
bestowed upon her.

Appeal from Sedgwick district court. Opinion filed
June 10, 1911. Reversed.

*John W. Adams,* and *George W. Adams,* for the ap-
pellant.

The opinion of the court was delivered by

WEST, J.:   The plaintiff sued for damages for the
alienation of her husband's affections.   The testimony
showed that Lenora and Norris T. Burch were married
in 1899, at Kirksville, Mo., and about four months
thereafter went to Scott City, Kan., where they re-
mained on a farm with a brother of Burch until about
April, 1901, when they moved to Sterling, Kan.   Here
four children were born, and at the time of the trial
were aged eight, six and four years and twenty months,
respectively.   The defendant, Mrs. Goodson, a widow,
somewhat older than Burch, lived at Sterling, and
Burch frequently worked for her by the day.   For
some reason he was frequently at her house during
evenings.   Mrs. Goodson desired to move to Wichita
and employed Burch to help in the preparations, and

he finally took his family to her house, where both he and his wife helped with the packing. There appeared to be another family also living in the house. Mrs. Goodson gave the plaintiff and the children a bed upstairs, but Burch continued to sleep somewhere downstairs, although there was plenty of room where the wife and children were. When the plaintiff would retire with the children Burch and the defendant would desire her to keep quiet while they settled up affairs, which usually occupied their time until eleven or twelve o'clock, consisting of settling up accounts, drinking beer and eating cheese. When Mrs. Goodson desired to talk to Burch during the day she would take him to the front parlor, shut the doors, and there have the conversation. After moving to Wichita and just before the plaintiff's youngest child was born, Mrs. Goodson went to Sterling, had dinner at Burch's place, and sent for beer, cheese and other things for herself. After dinner she had Burch drive her around on business. Burch protested that he had promised to take his wife out, that she had stayed in close and should get out, but Mrs. Goodson insisted that she must have Burch drive her, which he did, leaving his wife at home. They were seen together at the fair grounds. Burch returned home for supper and then left, returning again about twelve o'clock. A few weeks later he went to Wichita to see Mrs. Goodson, staying two or three days. He continued to make trips back and forth, and after the holidays in 1907 Mrs. Goodson wanted him to go west and sell her land. He went to Wichita and was gone about four days, when he returned home, saying he had a job. After various short stays at Wichita he remained at home one day and then was absent six weeks, during which time his children were all sick with the measles, and although his wife wrote him every day he did not reply. Afterward he returned home and sent his wife to her father's for a rest and went back to Wichita. After

returning to Sterling the plaintiff's children had the chickenpox, and upon informing her husband that the doctor advised a change of water for one child he wrote her to give the child a good drink. Later when he came home he met her at the depot and was very cold toward her, and soon returned to Wichita. Just before Christmas, 1908, he went to Sterling and asked his wife to sue for a divorce. Since his first coming to Wichita he has not contributed to the support of his wife and children, except to the extent of about $35. Since the separation the plaintiff has been making a living by washing, ironing and sewing. Mrs. Goodson once remarked to Mrs. Burch: "Isn't Mr. Burch a nice man; isn't he a nice looking man—most beautiful form"; also adding that he was "a grand looking man." Before moving to Wichita Mrs. Goodson at one time having received some money and coming near the home of the plaintiff lost her way, and sent for Burch to come and stay all night with her, which he did, although she had a family in her house at the time. One witness testified that he had lived at Sterling twenty-eight years and had seen Mrs. Goodson and Burch before the former moved to Wichita, had seen them at the fair grounds in a buggy at different times, had seen them together in Wichita in a buggy on Douglass avenue and in Payne's park, that they drank three bottles of beer on the highway on the north side of the park and also drank on the west side; that he had been in the rooming house at Wichita and Mrs. Goodson frequently made inquiries with reference to Burch and requested when he came in he be directed to call. The testimony showed that before this relationship with the defendant began Burch was kind to his family and provided for them, and that as the relationship continued his neglect increased until the final separation.

At the close of the plaintiff's evidence a demurrer thereto was sustained by the court, and the plaintiff appeals, assigning this ruling as error.

The defendant has not favored us with any brief or counter abstract, and we are left in the dark as to the reasons for the ruling. By the evidence introduced by the plaintiff—the major portion of which is in effect already stated—we think a *prima facie* case was made out. We can only judge of the matter as it appears from an examination of the printed page, and with this as our only light and information we are forced to conclude that this evidence, which for present purposes is by the demurrer admitted to be true, would justify the jury in finding that the defendant's assiduous attentions to Burch enabled her to monopolize his company and caused his increasing neglect of his family and coldness toward his wife, culminating in a request that she apply for a divorce. (*Powers v. Sumbler,* 83 Kan. 1.) The law no longer hesitates to award damages to a wife whose husband's affections have been wholly or partially alienated by the willful machinations of one who so far succeeds in overriding the laws of God and man as to deprive the wife of the affections which otherwise her husband would have bestowed. (*Rumor v. Rumor,* 67 Kan. 822; *Nevins v. Nevins,* 68 Kan. 410; *White v. White,* 76 Kan. 82; *Van Olinda v. Hall,* 95 N. Y. Supr. Ct. 452; *Nichols v. Nichols,* 147 Mo. 387; *Fratini v. Caslini,* 66 Vt. 273; *Nolin v. Pearson,* 191 Mass. 283; 6 A. & E. Ann. Cas. 658, 661, note; *Keen v. Keen,* 49 Ore. 362, 14 A. & E. Ann. Cas. 45, 47, note; *Clow v. Chapman,* 125 Mo. 101, 46 Am. St. Rep. 468, 472, note; *Daly v. Rizzutto,* [Wash. 1910] 109 Pac. 276, 29 L. R. A., n. s., 467, 468, note.)

The judgment of the trial court is reversed and the cause is remanded for further proceedings.