## SADIE M. WEBER v. JOHN L. WEBER.[1]

January 19, 1912.

Nos. 17,373—(197).

**Inadmissible evidence — hearsay.**

In an action for alienation of affections, statements and complaints made by plaintiff to a third person in the hearing of the alienated spouse, al-

1 Reported in 134 N. W. 124.

though not contradicted by the latter, *held* hearsay evidence and inadmissible.

### Question for the jury.

Evidence examined, and found sufficient to require a submission thereof to the jury.

### Charge of court.

No reversible error in the charge of the court or refusal to give requested instruction.

Action in the district court for Freeborn county to recover $10,000 for malicious alienation of affection of plaintiff's husband. The answer was a general denial. The case was tried before Kingsley, J., and a jury which returned a verdict in favor of plaintiff for $5,000. From an order denying defendant's motion for judgment notwithstanding the verdict and denying a new trial, provided plaintiff would accept a reduction of the verdict to $2,500, which she did, defendant appealed. Reversed and new trial granted.

*Catherwood & Nicholsen* and *Dunn & Carlson,* for appellant.

*French & Sasse* and *Morgan & Meighen,* for respondent.

HOLT, J.

This action is brought by plaintiff against defendant, her father-in-law, for alienating the affections of her husband. The trial resulted in a verdict of $5,000 for plaintiff. The defendant made the alternative motion for judgment notwithstanding the verdict or for a new trial. The motion was denied on condition that plaintiff consent to a reduction of the verdict to $2,500. Plaintiff having so consented, the defendant appeals to this court.

Plaintiff and William Ray Weber were married in February, 1908; he being then twenty-five years old, and she three or four years older. They at once went to the farm of the defendant and took charge of it. This farm contained some two hundred fifty acres, and was well furnished with buildings, implements, and stock of all kinds. The defendant also placed $2,000 in the bank for the use of his son. In April following the defendant came from Montana to visit the young people, and stayed for a week. He had never

met plaintiff prior thereto. At that time he found some fault with certain wasteful methods of the son, but nothing in the way of criticism of plaintiff was suggested. Indeed, he admonished his son to seek and heed the advice of his wife in conducting the farm, since she was experienced in farm life. The defendant left for the West, but, having learned that the son was squandering the money supplied, and neglecting the work, he returned in September. Prior to such return there had been disagreements between the young couple. The frequency, seriousness, and effect of these on the husband's affections are more or less in dispute.

When the defendant came back he did not go out to the farm, but telephoned the son to meet him at Austin, the nearest town of importance to the farm. The son went to Austin, and from there accompanied the defendant to the State Fair, instead of going with plaintiff, as had previously been agreed between the husband and wife. When they returned to the farm from the Fair, as a matter of convenience the father slept with the son in the bedroom usually occupied by the young couple, and plaintiff slept with a lady friend visiting her.

The next morning plaintiff's husband met with an accident, and was painfully injured by the explosion of a dynamite cap. In the excitement and anxiety of the defendant to get the proper care and medical attention for his son, the language used toward plaintiff was neither polite nor complimentary. From that time on till December 23, the defendant occupied the bedroom with the son on the ground floor; plaintiff sleeping upstairs, except a few nights when defendant was away. Plaintiff appears to have made no audible protest about this arrangement. Bickerings and quarrels continued between the young people after William Ray Weber got well, culminating in active hostilities on December 23, when he struck or kicked his wife and she threw a stick of stovewood at him. She then went home to her mother, following the advice or order which she claims the defendant then gave her. After that plaintiff visited the farm several times, taking away some property she claimed, and her husband visited her at her mother's home on three or four occasions, but they have never since resumed the marriage relation.

The defendant insists that the court erred in not directing a verdict in his favor, and in not ordering judgment notwithstanding the verdict.

In addition to what is hereinbefore stated, there was testimony to the effect that defendant said it did not take him long to get rid of plaintiff, and at another time, "Ray made a mistake by marrying that girl [Sadie]" (plaintiff); "she was a green country girl, and I am going to get rid of her;" that defendant criticised her meals before the husband and hired help, showed temper, and swore at her; that he was very much attached to the son, followed him around at his tasks during the day, kept close to him evenings, and whenever plaintiff attempted to be alone with her husband the defendant would intrude himself. From these and other circumstances detailed in the evidence, the jury may come legitimately to the conclusion that the defendant was carrying out a plan to poison the mind of his son against her, resulting in such treatment as would drive her away, and thus rid the son of an undesirable wife.

Of course, the case also presents an emphatic denial by defendant of any wrong towards plaintiff, and assertions by the son that his feelings had changed, in so far as there had been any change, before the defendant came to stay with them, and that, if defendant ever took any part in the family jars, it was to stand up for the wife—in short, that the defendant was an affectionate and indulgent father and a kind and considerate father-in-law. It will serve no useful purpose to further set out or attempt to analyze the evidence. We have examined the same with care, and conclude that there is support for a verdict in plaintiff's favor, unless testimony was erroneously received.

Exceptions were taken to portions of the charge and to refusals to give instructions requested by the defendant. While portions of a paragraph, or an isolated sentence, may be open to criticism, the charge, taken as a whole, correctly states the law, and also embodies such of defendant's requests as expressed good law and were applicable to the issues.

There remains to consider the errors assigned on the reception of certain testimony given by one Father Devlin, a Catholic priest.

116 M.—32.

After the husband recovered from his injuries, and while plaintiff was still on the farm, she requested the priest to come to the home, presumably to lend his help to restore peace in the family. Father Devlin had married them, and both were members of his flock. The defendant was not a Catholic. Against the objections of defendant that the conversations between the priest and the husband called for testimony which was incompetent, irrelevant, immaterial, hearsay, and a privileged communication made to a priest by two of his communicants, Father Devlin was permitted to testify, and his testimony was allowed to remain in the record after motions seasonably made by defendant to strike it out, as follows, viz.: When Sadie Weber and Ray Weber were both present, "my recollection is that I started by assuming that they hadn't been coming to church as regularly as I thought they should have been coming. Then Mrs. Weber began with her complaint which was substantially—As nearly as I can state it now, she left the subject that I brought up and said that life had become very unpleasant to her since the return of her father-in-law to the home there. That nothing that she did was satisfactory. She gave one individual instance of where he showed his displeasure, saying, 'Well, this is hell.' I don't remember the exact instance that it was. I remember the expression. I don't remember the circumstances that she said called forth that expression. Q. Who was it that had used that expression, as she stated? A. Her father-in-law, Mr. Weber. While these three were present together, he [Ray Weber] said very little. What he said might have no bearing on it, as I see it." By these three is meant the priest and the husband and wife.

There is abundant authority that declarations of the alienated spouse as to state of feeling toward the other, and even that such state of feeling has been induced by the acts of the wrongdoer, are admissible. 5 Wigmore, Evidence, § 1730; Hardwick v. Hardwick, 130 Iowa, 230, 106 N. W. 639; Nevins v. Nevins, 68 Kan. 410, 75 Pac. 492; White v. White, 140 Wis. 538, 122 N. W. 1051, 133 Am. St. 1100; Lockwood v. Lockwood, 67 Minn. 476, 70 N. W. 784. But we are cited to no case holding that the declarations of a plaintiff in an action of this nature as to the conduct of the defendant or the state of affections of the alienated one, or the cause therefor, are ad-

missible. A moment's reflection will show that such declarations are obnoxious as hearsay and self-serving. If such be proper evidence, all a plaintiff would have to do would be to go to a few friends, and maybe falsely tell them that the spouse has stated that his or her affections are gone as the result of a defendant's conduct, and then call these friends as witnesses. The plaintiff could then, without taking the witness stand, make out a case based entirely on false, though not perjured, testimony.

In Magers v. Magers, 143 Iowa, 750, 123 N. W. 330, a reversal was had because a witness was permitted to testify that plaintiff had stated to the witness that defendant, her husband, and a doctor had attempted to send plaintiff to a sanatorium.

There is no force in the suggestion that defendant, by cross-examination of the witness, or by offering testimony contradicting that of the witness Devlin, is prevented from now raising the objection. It is said the testimony is admissible because, plaintiff having made these complaints and declarations in the presence of her husband, his silence gave assent to them, the same as if he had made them. When the wife made these statements to the priest, was it proper to place the husband in the unenviable position of having to deny his wife's veracity in regard to his father, or else confess his father's misconduct? We think not. It may also be remarked that the declarations of the husband, made to the priest after plaintiff left them, are of questionable admissibility as evidence, especially that part which is a repetition by the witness of a lecture given the husband containing insinuations that he, in his domestic troubles, had improperly sought the aid and advice of his father.

The case made by the plaintiff is not a strong one on the record. Ample evidence is found to sustain a verdict for defendant, had it been rendered. In that situation it seems clear that this objectionable testimony, given by a person of the standing and influence of Father Devlin in the community, was prejudicial to the defendant's rights.

Order reversed and new trial granted.