ELLEN A. FREDERICK v. LILLIAN A. MORSE.

May Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed October 14, 1914.

*Alienation of Affections—Collusion—Evidence—Admissibility— Proof of Foreign Marriage—Justice of the Peace—Marriage Certificate—Foreign Statutes—How Proved—Proof of Mental Suffering—Necessity of Allegation—Instructions.*

In actions for criminal conversation, reputation and cohabitation are not competent evidence of marriage, and a marriage certificate, however complete and formal, does not prove itself.

In an action for alienation of the affections of plaintiff's husband and for criminal conversation with him, plaintiff's testimony showing the performance of a marriage ceremony and subsequent cohabitation was admissible in connection with the production of the marriage certificate and proof of the official signature thereto, if there was competent evidence of the authority of the person who made that signature.

Evidence that one is reputed to be, and that he has acted as, a justice of the peace is sufficient *prima facie* to prove that he was regularly appointed to that office.

The laws of sister states, when material to the merits of a case, must be established by legal evidence, and, if statute laws, must be proved by the production of the statute.

If a justice of the peace has, under the laws of a sister state, authority to solemnize marriages, it will be assumed that such authority is conferred by statute.

In an action for the alienation of the affections of plaintiff's husband and for criminal conversation with him, where plaintiff's evidence tended to show that she was married in the State of New York at a specified time by a designated justice of the peace, it was error to allow a lay witness for plaintiff to testify that he knew that, under the laws of the State of New York, a justice of the peace had authority to solemnize marriages.

Even if the mere exercise of an official function were sufficient to prove a foreign statutory authority, that exercise must be more than in a single instance and by a single person.

Symptoms of mental suffering may be shown by observers whenever the fact is material.

In an action for alienating the affections of plaintiff's husband and for criminal conversation with him, the jury, in estimating the damages, may consider the effect produced on plaintiff by the existence of the relations of which she complains, as they appeared to her at the time, and no special allegation is needed to make admissible evidence of such effect.

When the record shows that defendant excepted to designated evidence on the ground of immateriality, and states that there was no direct evidence of what would render the questioned evidence material, and refers to the whole transcript of the evidence for the purpose of settling the question raised, and nothing that purports to be a transcript of all the evidence bearing on that question is submitted to this Court, error does not appear.

In an action for alienating the affections of plaintiff's husband and for criminal conversation with him, where it appeared that defendant did some business in carrying people for hire, and a witness for defendant on direct examination testified that she had seen defendant carrying plaintiff's husband a great many times, but had seen nothing more than their riding together, if it was error, it was harmless to defendant, to allow plaintiff, on cross-examination, to elicit that witness had told plaintiff about having seen defendant riding with plaintiff's husband, and had talked it over with her, and that it was their usual conversation when riding together on three specified occasions.

In an action for alienating the affections of plaintiff's husband and for criminal conversation with him, where defendant claimed that the suit was brought and prosecuted by plaintiff in collusion with her husband, under an offer to show further that on the day plaintiff's husband left her he drew from the bank the whole of

his deposit, and left debts amounting to $1,000, plaintiff was properly allowed to testify in rebuttal that before her husband left her she knew of his having quite a large sum of money; that she had known him to have at each pay day large rolls of bills; that on the last pay day, about two weeks before he left, he was paid $500, and that he gave her only sufficient to cover the bills over Sunday.

The court properly charged that, if the jury found the fact of an adulterous disposition and the opportunities to commit adultery which the evidence tended to establish, and were satisfied from these facts that sexual intercourse was had on any of these occasions, plaintiff could recover under the count charging criminal conversation, unless the jury found that she was willing that her husband should have criminal conversation with defendant and consented thereto.

In an action for criminal conversation with plaintiff's husband, the court properly refused to charge that, if plaintiff had knowledge of the adulterous disposition of defendant and of her intent in connection with plaintiff's husband, and then continued to live with him, that would operate as a condonement, and should at least go in mitigation of damages.

In an action for the alienation of the affections of plaintiff's husband and for criminal conversation with him, where defendant claimed that the suit was brought and prosecuted by plaintiff in collusion with her husband, the court sufficiently charged on that phase of the case by instructing: "The defendant urges that the disappearance of the plaintiff's husband was a part of a scheme between the plaintiff and her husband to get damages of defendant. It is unnecessary for me to tell you, if such is the case, that the plaintiff could not recover in any event."

CASE for alienation of the affections of plaintiff's husband. Plea, the general issue. Trial by jury at the September Term, 1910, Windham County, *Taylor*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*Barber & Barber* and *E. W. Gibson* for the defendant.

*Chase & Daley* for the plaintiff.

If a marriage ceremony is proved, it is presuméd that the celebrant was duly authorized. *State* v. *Abbey,* 29 Vt. 60; *Franklin* v. *Lee,* 62 N. H. 78; 14 Am. & Eng. Enc. Law, pp. 520-522; *Wilkie* v. *Collins,* 48 Miss. 496; *Fleming* v. *People,* 27 N. Y. 329; *Blanchard* v. *Lambert,* 43 Iowa 228; *Com.* v. *Hayden,* 163 Mass. 453; *People* v. *Schoonmaker,* 117 Mich. 190; *State* v. *Hodgkins,* 19 Me. 155; Damson's Case, 6 Me. 148. Proof of a marriage *de facto* in another state will raise the presumption that it is in accordance with the laws thereof, and throws upon the party disputing it the burden of proving its invalidity. *Raynham* v. *Canton,* 3 Pick. 293; *Jones* v. *Gilbert,* 135 Ill. 27.

Where the issue in a *crim con* action is whether a certain man is the husband of the plaintiff, and the plaintiff testifies that she married him at a certain place, at a certain time, the ceremony being performed by a justice of the peace, that they lived together as husband and wife continuously thereafterwards for several years, the evidence would be sufficient to show the marriage, and record evidence is not necessary. *Mathews* v. *Silvander,* 85 N. W. 998; *Botts* v. *Botts,* 56 S. W. 677, 961; *State* v. *Wilson,* 22 Iowa 364; *State* v. *Williams,* 20 Iowa 98; *Jacobsen* v. *Siddall,* 7 Pac. 108; *Bissell* v. *Bissell,* 55 Barb. 325. Where a marriage is followed by cohabitation, its validity will be presumed. *State* v. *Lord,* 23 N. W. 507; *People* v. *Ives,* 68 N. W. 157; *People* v. *Calder,* 30 Mich. 85; *People* v. *McQuaid,* 85 Mich. 127.

MUNSON, J. The case was tried on a declaration in two counts, alleging alienation of affection and criminal conversation. The plaintiff testified that she was married to George H. Frederick, her claimed husband, at Hoosick Falls in the State of New York, on the 29th day of November, 1905, by W. C. Jones, a justice of the peace. She offered no eye-witnesses of exchange of consent or marriage ceremony, except her own testimony. The plaintiff then produced a certificate of marriage corresponding to this testimony, and introduced competent proof of the signature. The plaintiff also testified to cohabitation subsequent to the marriage ceremony. The plaintiff introduced one Byers, a resident of Hoosick and a relative of Jones, who testified that in New York justices of the peace were elected early in November every two years; that Jones had two terms; that he was acting as a justice in the latter part of November, 1905, and that he

9

once saw him perform a marriage ceremony. He was then asked if he knew whether a justice of the peace had authority under the laws of New York to solemnize marriages, and objection being made to his competency, the court said: "We will allow him to state whether he knows what the law is," and the witness having thereupon said that he knew they performed marriages, the question was renewed, and the witness replied, "he has." The witness was not a lawyer. The plaintiff also introduced a certified copy of a certificate of the marriage of these parties, with the accompanying statistical information, as the same were recorded in the office of the registrar of vital statistics. All this evidence was received under exception.

It is true that reputation and cohabitation are not competent proof of a marriage in actions for criminal conversation; *Northfield* v. *Vershire*, 33 Vt. 110; and that a marriage certificate, however complete and formal, does not prove itself. *State* v. *Horn*, 43 Vt. 20. But the plaintiff's testimony to the performance of a marriage ceremony and subsequent cohabitation was admissible in connection with the production of a marriage certificate with proof of the official signature, if there was competent evidence of the authority of the person signing. The testimony of Byers was sufficient proof of the official character of Jones. Evidence that one is reputed to be and has acted as a justice of the peace is *prima facie* proof that he was regularly appointed to that office. *State* v. *Abbey*, 29 Vt. 60, 67 Am. Dec. 754. So the question of proof turns upon the competency of the evidence received to show that justices of the peace in New York have authority to celebrate marriages.

It was said in *State* v. *Rood*, 12 Vt. 396, where the validity of a New York marriage was in question, that it was not necessary that the law be proved if it was known to the court at the trial, or if it was known to the Supreme Court to be as decided on the trial. This pronouncement was repudiated in *State* v. *Horn*, 43 Vt. 20. That was a trial for bigamy; and a paper purporting to be a certificate of a marriage performed in Pennsylvania by a justice of the peace was received in evidence, without any showing that there was a man bearing the name affixed to the certificate who was a justice of the peace, or that by the laws of Pennsylvania a justice of the peace had authority to solemnize marriages. As to the second objection the court said: "The laws of other states, when material to the merits of a case, can-

not be established except by legal evidence, and if statute laws, they must be proved by the production of the statute. If a justice of the peace has such authority by the laws of Pennsylvania, it is to be taken to exist by statute.''

This was the definite adoption of one of two rules, each of which has the' support of excellent authorities. Some of the states hold that statute laws may be shown by the testimony of persons found competent to testify regarding them. But most of them require the production of the statute. See 2 Wig. §1271, n. 4. This seems to be the rule of the United States Supreme Court. *Pierce* v. *Indseth,* 106 U. S. 546, 27 L. ed. 254, 1 Sup. Ct. 418. We are not indifferent to the arguments made in support of the more liberal rule, but the decision in *State* v. *Horn* has been the law of this State for over forty years, and we think that if a change is to be made it should be effected by legislative action.

But if we were to adopt the other rule, it would not avail the plaintiff upon the record submitted. If we treat the admission of the evidence as a finding of competency, it must be said that there was no evidence to support the finding. The only evidence of qualification was the statement of the witness that he knew that marriages were performed in New York by justices of the peace. If the exercise of an official function can be accepted as proof of a statutory authority, it must be something more than its exercise in a single instance or by a single person. It has recently been held in Rhode Island, with reference to parol evidence of the statutory provisions of another state, ''that courts should not admit in evidence and treat as correct the testimony of a witness as to such provisions, without examination as to his qualifications, and solely on the authority of his statement that he knows the laws of another state.'' *O'Donnell* v; *Johnson,* 90 Atl. 165, 167.

Witnesses who had noticed a change in the conduct of the plaintiff's husband towards her, were permitted to testify to subsequent changes in the appearance and conduct of the wife indicative of mental distress. These matters were objected to as self-serving evidence, and for want of any allegation of special damage. It is well settled that symptoms of mental suffering may be shown by observers whenever the fact is material. *Kidder* v. *Bacon,* 74 Vt. 263, 275, 52 Atl. 322. No special allegation was needed to make this evidence admissible. In estimating the'

damages sustained by the wife by the alienation of her husband's affection, the jury may consider the effect produced upon the plaintiff by the existence of the relations between the defendant and her husband as they appeared to her at the time. Note, 46 Am. St. Rep. 477; *Nevins* v. *Nevins,* 68 Kan. 410, 75 Pac. 492; *Rollins* v. *Chalmers,* 51 Vt. 592.

The house where the defendant lived was a short distance from and in sight of the mill operated by the plaintiff's husband. The plaintiff was permitted to show that there were occasions when Frederick was wanted at the mill and could not be found there, and that on such occasions the whistle would be blown to call him, and that he would be seen coming from the direction of the defendant's house. The evidence was objected to as immaterial. It is argued that the admissibility of the evidence must depend upon some showing connecting the defendant with these occurrences; and that it did not appear that the defendant was in the house at these times, or that she heard or knew of the blowing of the whistle, or that Frederick came from her house. The exceptions state that there was no direct evidence of these matters, and the whole transcript of the evidence bearing upon this question is referred to for the purpose of showing the circumstances tending to connect the defendant with them. Nothing which purports to be a transcript of all the evidence bearing upon this question has been submitted to us. The only questionable feature of the evidence, upon the case as it stands, is that it stops short of showing that Frederick came from defendant's house; and it may easily be supposed that the testimony covered circumstances which tended to show that Frederick came from the house as well as from the direction of the house. The defendant fails to show error.

It appears that the defendant did some business in carrying people for hire. A witness produced by the defendant, who had testified in direct examination that she had seen the defendant carrying plaintiff's husband a great many times, but had seen nothing more than their riding together,—was permitted to testify in cross-examination, against the defendant's objection, that she had told the plaintiff about having seen the defendant riding with plaintiff's husband, and had talked it all over with her, and that it was their usual conversation when riding together on three specified occasions. The ruling of the court was, "allowed in cross-examination under defend-

ant's exception." If this was not technically correct, we see no possible ground for saying that the evidence was harmful.

The plaintiff was permitted to testify in rebuttal that before her husband went away she knew of his having quite a large sum of money; that she had known him to have at each pay day large rolls of bills; that on the last pay day, about two weeks before he left, he was paid $500, and that he gave her only enough of it to cover the bills over Sunday. This was objected to as not rebuttal, the defendant having offered no evidence on the subject. The defendant claimed that the suit was brought and prosecuted in pursuance of a collusive understanding between the plaintiff and her husband; and this evidence was received as bearing upon the question of collusion, under an offer to show further that on the day Frederick left he drew from the bank the entire balance of his account, and left debts amounting to about $1,000; and that the plaintiff had made an agreement with an attorney for the creditors by which her mill was to be put to work to pay this indebtedness, and afterwards to be returned to her. We think the evidence objected to, with that offered in connection with it, tended to show that the plaintiff was not acting in collusion with her husband, and was therefore properly received in rebuttal.

The exceptions taken to the instructions of the court regarding proof of marriage are sufficiently disposed of by what has already been said.

The court charged in substance that if the jury found the fact of an adulterous disposition, and the opportunities to commit adultery which the evidence tended to establish, and were satisfied from these facts that sexual intercourse was had on any of these occasions, the plaintiff could recover under the second count, unless the jury found that she was willing that her husband should have criminal conversation with the defendant and consented to the act of intercourse. This instruction was excepted to, but we think it was correct and adequate. The defendant also excepted to the failure to charge that if the plaintiff had knowledge of the adulterous disposition of the defendant and of her intent in connection with Frederick, and then continued to live with him, that would operate as a condonement. and should at least go to mitigate the damages. The refusal to give this instruction was not error.

The court charged as follows upon the subject of collusion: "The defendant urges that the disappearance of the plaintiff's husband was a part of a scheme between the plaintiff and her husband to get damages from the defendant. It is unnecessary for me to tell you, if such is the case, that the plaintiff could not recover in any event." The defendant excepted for the failure to define a conspiracy; contending that the defendant was entitled to a full and complete charge in that respect. The charge was sufficient. The case as presented discloses nothing that called for a presentation of the law of conspiracy.

*Judgment reversed and cause remanded.*