DESSIE WARREN, Appellee, v. CLARA E. GRAHAM, Appellant.

HUSBAND AND WIFE: Alienation of Affections—Evidence—Sufficiency. Evidence reviewed, and *held* sufficient to justify a verdict for the alienation of the affections of the husband.

APPEAL AND ERROR: Waiver of Error—Motion for Directed Verdict. He who moves for directed verdict and suffers an adverse ruling and thereupon introduces his testimony, must then renew his motion, or waiver of error, if any, in the adverse ruling will result. In case such motion is not renewed, the insufficiency

of the evidence may be raised (a) by instruction or (b) by motion for new trial on the ground of the insufficiency of all the evidence to support a verdict.

**TRIAL: Reception of Evidence—Omnibus Motion to Strike.** A motion to strike out evidence embracing both competent and incompetent is properly overruled.

**HUSBAND AND WIFE: Alienation of Affections—Evidence—Husband's Reputation as to Paying Debts.** The theory that the husband's bad reputation in the matter of paying his debts has bearing on what the wife really lost by the alienation of his affections, is entirely too far-fetched to admit of its admissibility as evidence.

**APPEAL AND ERROR: Decisions Reviewable—Exclusion of Evidence—Necessity to Disclose Purpose.** The *purpose* of offered and rejected testimony should in some manner appear from the record.

**HUSBAND AND WIFE: Alienation of Affections—Evidence—Declarations of Alienated Spouse.** The declarations of the husband as to his affection for defendant, who is charged with alienating his affection, even though not in defendant's presence, are admissible as showing his *state of mind* and as *explanatory of his conduct* (and therefore a part of the *res gestae*), when there is *other* proof tending to show the actual alienation of the husband's affections by the defendant.

**HUSBAND AND WIFE: Alienation of Affections—Malice—Sufficiency of Showing.** Malice, in so far as it is an essential element of an action for the alienation of the affection of a husband or wife, is sufficiently shown, in an action against a stranger (that is, a person having no interest in either of the parties and under no duty to protect or advise either), by an alienation which is intentional, unjustifiable and wrongful on the part of such stranger.

**HUSBAND AND WIFE: Alienation of Affections—Duty of Defendant—Instructions.** Instruction, in an action for damages for the alienation of affection, reviewed, and *held*, when construed as a whole, to properly state the duty of defendant to refrain from any acts which would have a tendency to awaken affection on the part of the one whose affection was alleged to have been alienated.

**HUSBAND AND WIFE: Alienation of Affections—Proximate Cause.** Defendant's conduct, as shown in an action for alienation of

affection, need not be the *sole* cause of the alienation. It is sufficient if it be the *controlling* cause.

**TRIAL:   Verdicts—Excessiveness—$4,875—Alienation of Affections.**
10   Verdict for $4,875, in an action for alienation of the affection of a husband, reduced, conditionally, to $2,000. The husband was not thrifty, and was addicted to excessive drinking of intoxicating liquors. His sole savings during some 20 years of marriage was a house and lot. Neither the value of the lot nor the extent of his contribution to his family was shown. His affections for his wife were easily broken.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

SATURDAY, FEBRUARY 12, 1916.

ACTION at law for the alienation of the affections of plaintiff's husband. The defense was a general denial and a plea of the statute of limitations. No mitigating facts were pleaded. Upon the issues joined, the case was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $4,875, and defendant appeals.—*Modified* and *Affirmed on Condition.*

*John T. Murphy* and *George T. Hatley,* for appellant.

*Gerrit Klay* and *T. E. Diamond,* for appellee.

DEEMER, J.—I. Plaintiff was married to Dana Warren on May 20, 1891, after a courtship extending over some years. A child was born to them within five months after this marriage, and thereafter four others were born. Plaintiff was about 16 years of age when married, and her husband was about 25. Immediately after marriage, they went to housekeeping in Sioux City, where the husband was then employed, but within a year thereafter, they moved to the town of Hull. The husband was an expert sign writer, paper hanger and decorator; and after his removal to Hull, he established a photograph gallery. He and his wife were

1. HUSBAND AND WIFE: alienation of affections: evidence: sufficiency.

both fond of music and each developed considerable musical talent. According to the testimony, they lived happily together until about the year 1909, when for some reason, the husband's attitude toward his wife began to change; and finally, about September 1, 1911, he, without warning of his intended separation from his wife, left her and went to the city of Fort Dodge and there set up a studio. Plaintiff followed him to Fort Dodge; but he was cold, rejected her advances, and, during her stay in that city the husband, without indicating to anyone his intentions, so far as the record shows, left Fort Dodge about Christmas of the year 1911 without saying goodbye to his wife, and she has never seen him since. As a matter of fact, he seems to have become a wanderer on the face of the earth, and when last heard from, according to the record, he was at Reno, Nevada, intending to go from there to some place on the Pacific coast. Not long after he left Iowa, plaintiff received from his mother a deed for a house and lot in the town of Hull, which had been acquired during their residence there, which, according to the record, was the only tangible property he had. Plaintiff accepted the deed and is now the owner of this property. Like most men of his type, this husband was of a light-hearted, jovial disposition, given somewhat to drink, at times to excess, and within his means a good provider. As his children grew up, the boys assisted him in his work, and before that, the wife occasionally assisted him at his photograph gallery.

The defendant was reared on a farm near the town of Hull and resided there until the year 1896, when the family moved into a residence near to, if not within, the corporate limits of the town. Her father died in the year 1902, and her mother, in the year 1909. Shortly thereafter, she took up her residence with a brother, some miles from Hull, where she remained until about September, 1910, when she went to Chicago to visit relatives and friends. After that, she went to Missouri, remaining for a time at St. Charles and St. Louis,

and finally settled in St. Louis, where she was employed at the time of the trial of this case.

Plaintiff's husband became acquainted with defendant's family in a professional way shortly after he moved to the town of Hull, the defendant at that time being about 15 years of age. He became somewhat intimate with the Graham family, and the two families visited back and forth for a number of years, and until after the Graham family moved into town. The Grahams furnished the Warren family with butter and produce, until a short time before Mrs. Graham's death. The butter and produce were often delivered by defendant either at the house where plaintiff lived or at the husband's photograph gallery. Defendant was very frequently at this gallery, so much so as to arouse plaintiff's suspicions, which she says were finally confirmed by finding a negative of defendant *en deshabille,* in her husband's collection at the gallery. It is also shown that her husband became very confidential with the Graham family, unveiling to them some of the "skeletons" in his family closet, and defendant was present at this unveiling. About the time of the death of defendant's mother, plaintiff's husband apparently became very much interested in defendant's affairs, and, as she says, she called upon him for assistance in disposing of the property which came to her from her parents. At any rate, he visited her often at this time, going to her house at nights and remaining there each time until a late hour. After her removal to her brother's farm, the husband was called upon to do some work at this place, but, instead of attending to it himself, he and defendant seemingly regarded it as a good opportunity to be in each other's company, and made the most of it. After defendant went to Chicago, she kept up a correspondence with plaintiff's husband, and such letters as we have from defendant contained many terms of endearment and indicated a strong affection on her part for the plaintiff's husband. As the husband's affections for defendant seemed to grow in intensity, his love for his wife

seemed to dim in like proportions, and he finally concluded to abandon her. During the last year of defendant's residence in Hull, and just before she went to Chicago, the husband was seldom at home on Sundays, was frequently out late at nights, and, about July 20th of the year 1911, announced to a daughter that he had lost all affection for his wife and that he had found his ideal in another. Broadly outlined, this is the case as made for plaintiff, and it is enough to say at the outset that it is sufficient to justify a verdict in some amount, and that such verdict should stand unless some errors were committed by the trial court which demand a new trial. Several are assigned, and to such as we deem important we shall now devote our attention.

II. At the close of plaintiff's testimony, defendant moved for a directed verdict in her behalf. This motion was overruled; but, as defendant did not elect to stand thereon, but proceeded to introduce her testimony, there was no error of which she may complain. *Wiar v. Wabash R. Co.*, 162 Iowa 702; *Vogt v. Chicago, R. I. & P. R. Co.*, 164 Iowa 158, and cases cited. The only way to renew the point was by renewing the motion at the conclusion of all the testimony, by instruction or by motion for a new trial on the ground of the insufficiency of all the testimony to support a verdict. In the motion for a new trial, the point was made; but, as we have said, it is without merit.

2. APPEAL AND ERROR: waiver of error: motion for directed verdict.

III. After the testimony of two of plaintiff's witnesses had been taken, defendant moved to strike out the entire evidence of each. As some of it was competent and material, there was no error here, even if it be conceded that some of it was vulnerable to a motion. *Walrod v. Webster County*, 110 Iowa 349; *Sullivan v. Nicoulin*, 113 Iowa 76, and many cases cited.

3. TRIAL: reception of evidence: omnibus motion to strike.

IV. For some reason, which is not apparent of record, and which is not made sufficiently clear in argument, defend-

ant offered to prove the general reputation of plaintiff's hus-
band at Hull regarding his disposition to pay
his bills and obligations and as to whether or
not he did pay his debts. The trial court
would not permit the witness to answer the
interrogatories. We have no way of knowing
what the answer would have been or the purpose thereof, save
as indicated in the briefs filed for appellant, where it is said
that the purpose was to show that the husband's reputation
was bad and that he did not pay his debts, the thought being
that this disclosed his inability to support his wife and family
and that they lost nothing as a result of any alienation of
his affections. In the first place, counsel· did
not disclose this purpose to the trial court;
and next, even if the purpose had been shown,
we do not think the testimony was admissible.
Many men in good financial circumstances
are slow in paying bills and have a bad
reputation in this respect, and it does not follow from such
practice or from such reputation that they are not men of
financial means, or that they are not good family providers.
Two questions may be said to be involved here, in the one
ultimate one—the amount of plaintiff's loss in being deprived
of the consortium and support of her husband: First, did
he make provision for his family and support them as well
as his circumstances would reasonably permit; second, what
was his financial ability in fact? Neither reputation for
paying bills nor the actual fact that he did or did not pay
them promptly has any but the most remote bearing on this
subject and, as the ultimate facts were susceptible of direct
proof, there was no need to resort to the more remote infer-
ences, especially where these remote circumstances may be
explained quite as consistently on one theory as another. In
support· of these views, see *Arnold v. Livingstone*, 155 Iowa
601; *Porter v. Moles*, 151 Iowa 279.

·V. Plaintiff was also permitted to show that, just prior

4. HUSBAND AND
WIFE: aliena-
tion of affec-
tions: evi-
dence: hus-
band's reputa-
tion as to
paying debts.

5. APPEAL AND
ERROR: de-
cisions re-
viewable:
exclusion of
evidence:
necessity to
disclose pur-
pose.

to her husband's abandonment of her, he (the husband) declared his affections for the defendant; spoke of his feelings regarding his wife and otherwise indicated

**6. HUSBAND AND WIFE: alienation of affections: evidence: declarations of alienated spouse.**

his then state of mind, regarding the two women. These declarations were not in the presence of the defendant, but they were indicative of his (the husband's) then state of mind, and explanatory of his future conduct. They were not, it is true, substantive proof against the defendant, but were competent, there being other proof in the record showing defendant's conduct toward him to establish the effect thereof upon the husband. As such, they were *res gestae,* and under our rule clearly admissible. *Sexton v. Sexton,* 129 Iowa 487; *Price v. Price,* 91 Iowa 693; *Lockwood v. Lockwood,* (Minn.) 70 N. W. 784; *Nevins v. Nevins,* (Kas.) 75 Pac. 492; *Perry v. Lovejoy,* (Mich.) 14 N. W. 485.

VI.   But one instruction is complained of, although it is said in argument that the instructions as a whole are faulty, in that the court neglected to charge that defendant could not be held liable unless it appeared that she was

**7. HUSBAND AND WIFE: alienation of affections: malice: sufficiency of showing.**

actuated by malice in what she did. Upon this last proposition, defendant made no request for instructions, and no exception to the charge was lodged on this ground. Aside from this, as this action is against a stranger, a person having no interest in either of the parties to the suit and being under no duty to shield or protect either, it is not, as we understand it, necessary to show actual malice in order to justify a recovery from one who alienates the affections of either husband or wife. *Hartpence v. Rodgers,* (Mo.) 45 S. W. 650; *Trumbull v. Trumbull,* (Neb.) 98 N. W. 683; *Westlake v. Westlake,* 34 Ohio 621 (32 Am. Rep. 397); *Boland v. Stanley,* (Ark.) 115 S. W. 163; *Sickler v. Mannix,* (Neb.) 93 N. W. 1018. It may be true that malice is the gist of the action, but it is not necessary that express malice be shown. It may be implied, and, as a rule, all that plaintiff need show in an action

against a stranger who was under no duty and who was not called upon to give advice is that such person intentionally, unjustifiably and wrongfully induced the husband to leave his wife. This establishes all the malice that is necessary to make out a case for plaintiff. The trial court in effect so instructed, in the fifth paragraph of its charge.

VII. The instruction complained of reads as follows:

"You are further instructed as a matter of law, that it was the duty of the defendant to refrain, so far as she reasonably could, from doing any act which she knew would have a tendency to awaken affection on the part of the plaintiff's husband towards her."

8. HUSBAND AND WIFE: alienation of affections: duty of defendant: instructions.

In view of the complaint made against it, it is necessary to quote the others bearing upon this subject. They are as follows:

"You are instructed that if you find from the evidence that the defendant had bestowed her affections on plaintiff's husband and that he reciprocated this affection, this fact alone would not be sufficient to authorize a recovery in this action. Before the plaintiff can recover, she must show that the defendant by her acts and conduct and attention to the plaintiff's husband, wilfully and intentionally alienated his affection and love for the plaintiff.

"You are further instructed that if you find from the evidence that Dana Warren, plaintiff's husband, invited and solicited the friendship and attention of defendant and by praise and flattery or other arts and means won the love of the defendant and you further find that whatever acts or things done on the part of the defendant, if anything, was done in response to the solicitation wholly of the said Dana Warren, and you further find that the defendant in this cause in no manner by her acts and conduct and attentions to the said Dana Warren, wilfully and intentionally alienated his affections for his wife, then the plaintiff cannot recover and you should so find.

"You are instructed that if the plaintiff by her own conduct alienated the affections of her husband, so that he withdrew from her society, or if you find that the said Dana Warren never had any affection for the plaintiff or that the said Dana Warren naturally lost his affection for his wife without any apparent reason, then the plaintiff cannot recover in this action and you should so find."

It is said that the instructions are contradictory, but we do not so regard them. The only argument necessary at this point is a reading of the instructions themselves. Further, it is said that the instruction is inadequate in that it omits the essential element of malice. That point has already been adverted to. Again, it is argued that the instruction is erroneous in substance and that defendant was under no such duty as therein expressed. The instruction standing alone, and without reference to the facts disclosed by the testimony, would be wholly inadequate; but, considered in the light of the testimony and with the other instructions, it was not prejudicially erroneous. It appears that defendant knew, from having heard the confidential communication between plaintiff's husband and her parents, that the relations between the husband and his wife were somewhat strained; that he might easily be made susceptible to her charms; knew that for some reason he had become interested in her; and a jury may have found from the testimony that, with this knowledge, she actually encouraged his attentions and readily responded to his show of affection. We do not mean to affirm this as truth, for it is not our province, under the record and in view of the conflicting testimony and the inferences to be derived therefrom, to say what the real truth is; that was for the jury, and with its finding the parties must be content. It was not necessary for plaintiff to show that defendant's conduct was the sole cause of her loss—it was enough that it was the controlling cause, without which her husband would not have left her. *Rice v. Rice*

9. HUSBAND AND WIFE: alienation of affections: proximate cause.

(Mich.) 62 N. W. 833; *Nevins v. Nevins, supra; Plourd v. Jarvis*, (Me.) 58 Atl. 774.

VIII.   There was no error in the instruction relating to the statute of limitations, and the. testimony was sufficient to justify a finding that the action was not barred.

IX.   The last question relates to the size of the verdict. This is the one serious question in the case.   Precedents are of little value here, for each action is dependent on its own peculiar facts.   Plaintiff's husband was not a thrifty man.   With the help of his family, his only savings were in the house and lot which he deeded to the plaintiff before permanently leaving the country.   So far as shown, this represented his entire savings, except, perhaps, some small items of personal property which have not been scheduled or valued.   The amount he contributed each year toward plaintiff's support is not shown, nor is the value of the house and lot disclosed.   The record is singularly barren of all testimony tending to show the value of the husband's support or his financial ability.   We know only that plaintiff. has received practically all his visible assets.   The husband was a heavy drinker, and there is no testimony that he has reformed. While we must assume, because of the finding of the jury, that defendant caused him to leave his wife, we cannot overlook the fact that he was easily induced to succumb to defendant's wiles, and consequently the marriage ties were not so strong that they did not readily yield.   Some courts are of opinion that, because of biological and physiological differences in the sexes, a woman is rarely, if ever, the aggressor in such matters, and that a man cannot be seduced and led from the paths of virtue.   See *Kroessin v. Keller*, (Minn.) 62 N. W. 438.   We have not taken that view.   Indeed, it is a matter of common knowledge that many men have been lost to the world through the "betraying smiles and subtle wiles of a woman."

10. TRIAL: verdicts: excessiveness: $4,875: alienation of affections.

But however this may be, the facts in this case are such as to lead us to the conclusion that the verdict is excessive and that it should be reduced. Our conclusion is that at plaintiff's election she may have a judgment in this court for the sum of $2,000 or take a new trial. In the event that she elects to take judgment in the amount named, with costs of the trial below, then it will be ordered that the judgment be affirmed; otherwise, reversed. *Modified* and *Affirmed on Condition.* ..

EVANS, C. J., WEAVER and PRESTON, JJ., concur.